## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MIGUEL MURILLO, on Behalf of Himself and All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| KOHL'S CORPORATION and KOHL'S DEPARTMENT STORES, INC., | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

## COMPLAINT

Plaintiff Miguel Murillo ("Plaintiff") alleges the following based upon personal knowledge as to himself and his own acts and upon information, belief, and investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by and/or concerning Kohl's Corporation and/or Kohl's Department Stores, Inc. (collectively, "Kohl's" or "Defendants") as to all other matters. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## INTRODUCTION

1.      This action seeks to remedy the unfair, deceptive, and unlawful business practices of Defendants with respect to the marketing, advertising, labeling, and sales of merchandise offered by Defendants online and in their brick-and-mortar stores.

2.      Throughout the Class Period (defined below), Defendants misrepresented the existence, nature, and amount of price discounts on items offered for sale by purporting to offer specific dollar or percentage discounts from "regular" or "original" "item price" retail prices. These purported discounts are false and misleading, however, because the "regular" or "original" item prices advertised by Defendants are fabricated or inflated and do not represent the actual regular prices for Defendants' merchandise.   In fact, Defendants did not sell "discounted" merchandise at the "regular" or "original" item price in meaningful amounts or for meaningful periods of time.   Moreover, the advertised "regular" or "original" item prices for the affected merchandise were not the lowest price for the same quantity and quality of merchandise.

3.      As alleged herein, Defendants openly and actively sold the merchandise in violation of Wisconsin and other state and federal laws.

4.      Kohl's admits as much on its own website.  Buried deep in Kohl's website is the

1

following discussion in small print of Kohl's discounting policy:

> "Sale" prices and percentage savings offered by Kohl's are discounts from Kohl's "Regular" or "Original" prices. The "Regular" or "Original" price of an item is the former or future offered price for the item or a comparable item by Kohl's or another retailer. ***Actual sales may not have been made at the "Regular" or "Original" prices***, and intermediate markdowns may have been taken. ***"Original" prices may not have been in effect during the past 90 days or in all trade areas***. Merchandise on this Web site could be offered at the same or lower "Sale" prices during future promotional events beginning on or after the last day of this advertised event.

[Emphasis added.] *Pricing & Product Information*, Kohl's, https://cs.kohls.com/app/answers/detail/a_id/85 (last visited February 18, 2016).

5.     The Federal Trade Commission ("FTC") has described this type of discount price comparison scheme, such as those used by Defendants, as misleading and deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. ***If, on the other hand, the former price being advertised is not bona fide but fictitious–for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction–the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price***.

[Emphasis added.] 16 C.F.R. §233.1(a).

6.     Wisconsin law prohibits such deceptive pricing practices, such as offering fictitious original item and sale prices:

> In advertising or otherwise representing the sale or furnishing of any property or services combined with or conditioned on the purchase of any other property or services described in such advertisement or other representation, it is deceptive for a retailer to:
>
> * * *
>
> 3.     Mark up the regular price of the property or services which must be purchased.

Wis. Stat. §100.18(2)(a)(3).

7.     As a result of Defendants' false and misleading labeling, advertising, and marketing of supposedly discounted retail prices based on "regular" or "original" prices, Plaintiff and members of the proposed Classes (defined below) have suffered injury in fact, including economic damages, and have lost money or property.  Specifically, Plaintiff and members of the Classes have purchased Defendants' merchandise under the mistaken belief that these products were actually offered for sale at a meaningful discount from Defendants' "regular" or "original" item prices for those items.  But for Defendants' false and misleading advertising and marketing of their merchandise, Plaintiff and members of the Classes would not have purchased such merchandise and/or would not have paid as much for such merchandise as they did.

8.     Plaintiff brings claims on behalf of himself and the proposed Classes for unjust enrichment and violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18, *et seq.* ("WDTPA") and violations of similar consumer protection statutes of other states.  Plaintiff seeks to permanently enjoin Defendants from using false and misleading claims regarding retail price comparisons in their packaging, labeling, and advertising.  Further, Plaintiff seeks to obtain restitution and other appropriate relief in the amount by which Defendants were unjustly enriched as a result of their sales of merchandise offered at a false discount.  Plaintiff also seeks damages as provided for pursuant to the WDTPA.  Finally, Plaintiff seeks reasonable attorneys' fees, pursuant to the WDTPA, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## PARTIES

9.     Plaintiff Miguel Murillo is a citizen of Wisconsin.  During the Class Period, Plaintiff purchased one or more items from Defendants at a supposed sale or discount price off of

the "regular" or "original" item prices. Plaintiff relied on Defendants' deceptive labeling, advertising, and marketing scheme in deciding to purchase the merchandise. Were it not for Defendants' deceptive labeling, advertising, and marketing, Plaintiff would not have purchased the merchandise and/or would not have paid as much as he did for the merchandise.

10. Defendant Kohl's Corporation is a Wisconsin company with its principal place of business located at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin.

11. Defendant Kohl's Department Stores, Inc. is a Delaware company with its principal place of business located at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a Class action in which at least one member of each of the Classes is a citizen of a State different from any Defendant.

13. This Court has personal jurisdiction over Defendants because Defendant Kohl's Corporation is a Wisconsin corporation, and both Defendants are headquartered in Wisconsin, own and operate retail stores in Wisconsin, systematically and continuously conducted business in and throughout the State of Wisconsin, and intentionally avail themselves of the markets within Wisconsin through the promotion, sale, marketing, and distribution of their products. Moreover, Plaintiff believes that Defendants' acts, practices, and policies pertaining to the advertising, marketing, and sale of merchandise at specific dollar or percentage discounts from "regular" or "original" "item price" retail prices were established in and emanated from Wisconsin. Further, Defendants' wrongful conduct, as described herein, foreseeably affects

4

consumers in Wisconsin and throughout the United States.

14.     Venue is proper in this District under 28 U.S.C. §1391(a) because Defendants are headquartered in this District and maintain sufficient contacts to subject them to personal jurisdiction if this District were a separate State.  Thus, under 28 U.S.C. §1391(c)(2), (d), Defendants are deemed to reside in this District.  As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendants are deemed to reside in this District and under 28 U.S.C. §1391(b)(2) because Defendants conduct business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## FACTUAL ALLEGATIONS

**A.     Kohl's Business and Marketing of Its Products**

15.     Defendant Kohl's Corporation was organized in 1988.  As of January 31, 2015, Kohl's operated 1,162 department stores in 49 states, including 37 stores in Wisconsin, and an e-commerce website (www.kohls.com).  Kohl's sells private label, exclusive, and national brand apparel, footwear, accessories, beauty, and home products.  Kohl's stores generally carry a consistent merchandise assortment with some differences attributable to regional preferences. Kohl's website includes merchandise which is available in its stores, as well as merchandise which is available only online.

16.     Kohl's merchandise mix includes both national brands and private and exclusive brands, which are available only at Kohl's.  National brands generally have higher selling prices than private and exclusive brands.  Most of Kohl's private brands are well-known, established brands, such as Apt. 9, Croft & Barrow, Jumping Beans, SO and Sonoma Life+Style.  Selling prices for Kohl's private brands are generally lower than exclusive and national brands. Exclusive brands are developed and marketed through agreements with nationally recognized

brands. Examples of Kohl's exclusive brands include Food Network, Jennifer Lopez, Marc Anthony, Rock & Republic, and Simply Vera Vera Wang. Exclusive brands have selling prices which are generally lower than national brands, but higher than private brands.

17.     National brands comprised 50% of Kohl's sales in 2014, with private and exclusive brands comprising the remaining 50%.

18.     Kohl's prominently touts its "incredible savings" in its public statements. "Incredible savings" is one of the five pillars of the current "Greatness Agenda" launched by Kohl's in the first quarter of 2014. The Greatness Agenda is designed to increase sales, primarily by increasing the number of customers that shop at its stores and online.

19.     Unfortunately, the "incredible savings" Kohl's presents to its customers are illusory. Kohl's offers its customers purported "savings" that are based on false and inflated "regular" prices. The "item price" advertised by Kohl's does not reflect a price at which the products are routinely, if ever, sold to retail customers by Kohl's.

20.     Kohl's knew, or should have known, that its pricing scheme was intended to convey false information to consumers, including Plaintiff, about the goods to cause consumers to purchase such goods believing that they were obtaining items below their actual or regular prices.

21.     Buried deep in Kohl's website is the following discussion in small print of Kohl's discounting policy:

> "Sale" prices and percentage savings offered by Kohl's are discounts from Kohl's "Regular" or "Original" prices. The "Regular" or "Original" price of an item is the former or future offered price for the item or a comparable item by Kohl's or another retailer. Actual sales may not have been made at the "Regular" or "Original" prices, and intermediate markdowns may have been taken. "Original" prices may not have been in effect during the past 90 days or in all trade areas. Merchandise on this Web site could be offered at the same or lower "Sale" prices during future promotional events beginning on or after the last day of this

advertised event.

*Pricing & Product Information*, KOHL'S, https://cs.kohls.com/app/answers/detail/a_id/85 (last visited February 18, 2016).

22.    Defendants' representations were likely to mislead reasonable consumers into believing that Defendants' prices were significantly lower than the prices regularly offered for those products by Defendants, or offered by other merchants for the identical products, and that consumers would enjoy significant savings by purchasing those products from Defendants instead of from other merchants.

23.    Defendants' false and/or misleading pricing representations made it more likely that consumers would purchase particular products from Defendants.  For some products, Defendants' misleading claims of a huge discount (in certain instances in excess of 30% off of "regular" or "original" listed prices) were likely to deceive consumers, who were not inclined to purchase the product at all, to buy it from Defendants solely because they were misled into believing that they were getting an unusually good deal.

24.    Defendants' misrepresentations about their pricing were likely to mislead consumers into believing that Defendants' prices would always be significantly lower than the prices offered by other merchants for the identical products.

25.    Plaintiff is informed and believes that the alleged item prices affixed to each item at Defendants' stores, at all relevant times throughout the Class Period, were false prices and not true prices that Defendants had previously employed for such items, or that other merchants had employed, for any such item, at any time during the time that any such item was marked with the alleged item price.

26.    Defendants have engaged in a nationwide-wide, pervasive, and continuous campaign of falsely claiming that each of their products sold at a far higher price by other

7

merchants, in order to induce Plaintiff and all Class members to purchase merchandise at purportedly marked-down sale prices.

27. Plaintiff is informed and believes that Defendants' false price advertising scheme, disseminated to consumers via representations on price tags, as well as in-store advertising, print advertising, and/or internet advertising, is part of a concerted, years-long, pervasive campaign and has been consistently implemented across all of Defendants' merchandise at each of its stores and online. Defendants' pricing scheme has been prominently displayed directly on the price tag of each item sold and on receipts for purchased merchandise, with express references to alleged item prices that have never existed and/or do not, and/or did not then, currently constitute the prevailing market retail prices for such merchandise.

28. If it were not for Defendants' false price advertising scheme, Plaintiff and the Classes would not have purchased the merchandise at issue and/or would not have paid as much for it as they did.

**B. Applicable Price Discounting Laws**

29. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." (15 U.S.C. §45(a)(1)) The FTCA specifically makes it "unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement." (15 U.S.C. §52(a))

30. Under the FTCA, advertising must be truthful and non-deceptive, advertisers, such as Defendants, must have evidence to support their claims, and advertisements cannot be unfair. An advertisement is deceptive, according to the FTC, if it contains a misstatement or omits information that is likely to mislead consumers acting reasonably under the circumstances and the statement or omitted information is material, that is, important to a consumer's decision

to buy or use the product.

31.     The FTC has issued regulations describing misleading discount price comparison

schemes, such as those used by Defendants, as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  ***If, on the other hand, the former price being advertised is not bona fide but fictitious–for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction–the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.***

[Emphasis added.] 16 C.F.R. §233.1(a);

> A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith–and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.  And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $___"), unless substantial sales at that price were actually made.

16 C.F.R. §233.1(b);

> ***If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one.***

[Emphasis added.] 16 C.F.R. §233.1(e);

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading.  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the

higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area–that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. §233.2(a); and

The practices covered in the provisions set forth above represent the most frequently employed forms of bargain advertising. However, there are many variations which appear from time to time and which are, in the main, controlled by the same general principles. For example, retailers should not advertise a retail price as a "wholesale" price. They should not represent that they are selling at "factory" prices when they are not selling at the prices paid by those purchasing directly from the manufacturer. They should not offer seconds or imperfect or irregular merchandise at a reduced price without disclosing that the higher comparative price refers to the price of the merchandise if perfect. They should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a "limited" offer which, in fact, is not limited. In all of these situations, as well as in others too numerous to mention, advertisers should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the public.

16 C.F.R. §233.5.

32. Likewise, Wisconsin law prohibits untrue, deceptive, and misleading pricing practices:

No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or

misleading.

Wis. Stat. §100.18(1);

In advertising or otherwise representing the sale or furnishing of any property or services combined with or conditioned on the purchase of any other property or services described in such advertisement or other representation, it is deceptive for a retailer to:

* * *

3.     Mark up the regular price of the property or services which must be purchased.

Wis. Stat. §100.18(2)(a)(3); and

In this subsection, "regular price" means the lowest price for the same quantity and quality of product or the same services, at which the seller or advertiser of the product or services openly and actively sold the product or services in the geographic trade area of the advertisement or representation during the seller's or advertiser's most recent and regular 30-day course of business.

Wis. Stat. §100.18(2)(c).

## C.     Kohl's Deceptive Pricing Scheme

33.     Consumers' Checkbook/Center for the Study of Services ("CSS") is an independent, nonprofit consumer organization based in Washington, D.C.  Its stated purpose is "to provide consumers information to help them get high quality services and products at the best possible prices."[1]

34.     Beginning in June 2014 and continuing through March 2015, CSS conducted a survey of seven national retail chains and Amazon.com, tracking prices weekly for six to ten big-ticket items from each retailer.[2]  Most price checks were made online, with spot checking of in-store prices.

35.     The CSS survey discovered that for some of the stores, including Kohl's, "some

---

[1]     *About Us*, CONSUMERS' CHECKBOOK, http://www.checkbook.org/about.cfm (last visited February 18, 2016)
[2]     *Sale Fail*, CONSUMERS' CHECKBOOK, http://www.checkbook.org/salefail/ (last visited February 18, 2016)

of the products for almost all of the weeks we checked were offered at sale prices." *Id*. at fn. 2.

36.     Specifically, the CSS report made the following findings regarding Kohl's price

discounting scheme:

> Most of the items (eight out of nine items) we checked were offered at sale prices
> more than half the time. Four of the items were always or almost always offered
> at sale prices.  Kohl's purported discounts are less than those Sears reports.
> Although its practices are not as egregious as Sears' practices, ***Checkbook.org
> believes Kohl's pricing policies are also deceptive and often constitute
> misleading advertising techniques***.

[Emphasis added.] *Id*. at fn. 2.

37.     One item tracked by CSS was offered at the "regular" price only once in the

course of the study:



38.     As the CSS report put it, at Kohl's, "***the sales often never end***."  [Emphasis

added.] *Id*. at fn. 2.

**D.     Plaintiff's Purchases of Purported Sales Items**

39.     Upon checkout, Kohl's provides consumers, including Plaintiff, with sales

receipts containing the purported "Item Price" and the actual sales price.  Also on the receipt,

Kohl's prominently alerts the consumer, in all-caps and bolded font, of the "**TOTAL SAVED**."

The "total saved" amount is frequently circled in pen by the checkout cashier, in order to further

highlight the purported savings given to the consumer.

40.	On November 22, 2015, Plaintiff shopped at a Kohl's store in Madison, Wisconsin. He purchased three items. The total purchase price was $112.85. The receipt listed the "**TOTAL SAVED**" as $38.03. The purchase is broken down in the chart below:

| Description | Item Price | Sale Price | Difference | Amount paid |
|---|---|---|---|---|
| Women's running shoes | 75.00 | 69.99 | 5.01 | 69.99 |
| Junior bottom | 40.00 | 21.99 | 18.01 | 21.99 |
| Junior bottom | 30.00 | 14.99 | 15.01 | 14.99 |
| | | | **TOTAL SAVED** | **38.03** |

41.	On November 13, 2015, Plaintiff shopped at a Kohl's store in Madison, Wisconsin. He purchased four items. The total purchase price was $71.70. The receipt listed the "**TOTAL SAVED**" as $73.04. The purchase is broken down in the chart below:

| Description | Item Price | Sale Price | Difference | Amount paid (after further 15% discount) |
|---|---|---|---|---|
| Juniors sweater | 30.00 | 14.99 | 15.01 | 12.74 |
| Juniors sweater | 30.00 | 14.99 | 15.01 | 12.74 |
| Misses active | 45.00 | 29.99 | 15.01 | 25.49 |
| Junior bottom | 36.00 | 19.99 | 16.01 | 16.99 |
| | | | **TOTAL SAVED** | **73.04** |

42.	On November 25, 2015, Plaintiff shopped at a Kohl's store in Madison, Wisconsin. He purchased three items. The total purchase price was $89.64. The receipt listed the "**TOTAL SAVED**" as $73.03. The purchase is broken down in the chart below:

| Description | Item Price | Sale Price | Difference | Amount paid (after further 15% discount) |
|---|---|---|---|---|
| Sterling silver | 60.00 | 19.99 | 40.01 | 16.99 |
| Junior collection | 38.00 | 24.99 | 13.01 | 21.24 |
| Women's athletic shoes | 60.00 | 54.99 | 5.01 | 46.74 |
| | | | **TOTAL SAVED** | **73.03** |

13

43.     In addition to the purchases detailed above, Plaintiff made numerous other purchases of products from Defendants during the Class Period, which were advertised, labeled, and sold at purported discounts from an "original" or "regular" item price.  Upon information and belief, the purported "original" or "regular" item prices for the merchandise purchased by Plaintiff were not the true original or regular item prices, and the purported discount and savings from those item prices were therefore false, misleading, and deceptive.

44.     As a result of Defendants' conduct detailed herein, Plaintiff has been injured by Defendants' violations of the aforementioned provisions of federal and state law.

### DAMAGES TO PLAINTIFF AND THE CLASSES

45.     Plaintiff purchased merchandise from Defendants based on Defendants' pricing, advertising, and marketing that the merchandise represented significant savings over the "Item Price," as described above.

46.     Plaintiff and the members of the Classes would not have purchased the merchandise from Kohl's at all, or would not have paid as much for the merchandise, were it not for the purported "savings" adverted to by Defendants.

### CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action individually and on behalf of the following Class, pursuant to Federal Rules of Civil Procedure, Rule 23, (the "Nationwide Class"):

> All individuals residing in the United States and its territories who purchased one or more items from Defendants advertised at a discount from an original "item price" any time between February 18, 2012 and the present (the "Nationwide Class Period").

48.     Plaintiff also brings this action individually and as a Class action, pursuant to Fed. R. Civ. P. 23, on behalf of the following subclass of persons who made purchases within the State of Wisconsin (the "Wisconsin Class"):

All individuals who purchased one or more items from Defendants within the State of Wisconsin advertised at a discount from an original "item price" any time between February 18, 2012 and the present (the "Wisconsin Class Period") (together with the Nationwide Class Period, the "Class Period").

49. Plaintiff reserves the right to redefine the Classes prior to certification.

50. Excluded from the Classes are Defendants, any of their parent companies, subsidiaries, and/or affiliates, their officers, directors, legal representatives, and employees, any co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

51. This action is brought and may properly be maintained as a Class action, pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

52. The Classes are so numerous that the individual joinder of all of its members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes that the total number of Class members is in the thousands and that the members of the Classes are geographically dispersed across the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

53. Common questions of law and fact exist as to all members of the Classes and these common questions predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

      a.     whether Defendants violated provisions of the FTCA and federal regulations through the pricing, advertising, and marketing of their

merchandise;

b.      whether Defendants' pricing, advertising, and marketing of their merchandise was false and misleading;

c.      whether Defendants' conduct constitutes a violation of the WDTPA;

d.      whether Plaintiff and the Classes are entitled to compensatory damages and, if so, the nature of such damages;

e.      whether Plaintiff and the Classes are entitled to restitutionary relief; and

f.      whether Plaintiff and the Classes are entitled to injunctive relief.

54.      Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by Defendants' common course of conduct, since they all relied on Defendants' representations concerning their merchandise and purchased one or more items based on those representations.

55.      Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in handling complex Class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

56.      A Class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The Class action device allows a single court to provide the benefits of unitary adjudication, judicial

economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a Class action conserves the resources of the parties and of the judicial system and protects the rights of the Classes. Furthermore, for many, if not most, a Class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

57.     This action is maintainable as a Class action under Fed. R. Civ. P. 23(b)(1) because individual actions by Class members would create: (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants; and/or (2) adjudications that, as a practical matter, would be dispositive of the interests of other Class members not parties to the adjudications, and would substantially impair or impede the ability of such non-party Class members to protect their interests.

58.     This action is maintainable as a Class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief respecting the Classes as a whole.

59.     This action is maintainable as a Class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Violation of Wisconsin Deceptive Trade Practices Act,
Wis. Stat. §100.18, *et seq.*, on Behalf of the Nationwide Class,
or in the Alternative, on Behalf of the Wisconsin Class)**

60.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

61.     Plaintiff brings this claim individually and on behalf of members of the

Nationwide Class under Wisconsin law.

62.    Plaintiff purchased Kohl's merchandise for his own personal use.

63.    The acts and practices of Defendants, as described above, deceived Plaintiff and members of the Nationwide Class, as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Nationwide Class.

64.    By committing the acts alleged above, Defendants have violated the WDTPA.

65.    Plaintiff and Nationwide Class members suffered injuries caused by Defendants' misrepresentations because: (a) they were induced to purchase a product they would not have otherwise purchased if they had known that Kohl's merchandise was not, among other things, being offered at a significant discount; and/or (b) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Kohl's merchandise.

66.    Plaintiff and the Nationwide Class members are entitled to, pursuant to Wis. Stat. §100.18(11)(b), recovery of damages in the amount of twice the pecuniary loss suffered, together with the payment of costs and attorneys' fees.

67.    In the alternative, Plaintiff brings this claim individually, as well as on behalf of the Wisconsin Class, under Wisconsin law.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment on Behalf of the Nationwide Class,**
**or in the Alternative, on Behalf of the Wisconsin Class)**

68.    Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

69.    Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class, under Wisconsin law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real

differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which Class members will be drawn, Wisconsin law applies to the claims of the Nationwide Class.

70. In the alternative, Plaintiff brings this claim individually, as well as on behalf of the Wisconsin Class, under Wisconsin law.

71. At all times relevant hereto, Defendants deceptively priced, marketed, advertised, and sold merchandise to Plaintiff and the Classes.

72. Plaintiff and members of the Classes conferred upon Defendants non-gratuitous payments for merchandise that they would not have, if not for Defendants' deceptive pricing, advertising, and marketing. Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

73. Defendants have been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendants misrepresented, among other things, that their merchandise was being offered at a significant discount, which caused injuries to Plaintiff and members of the Classes because they paid for and/or paid a price premium due to

the misleading pricing and advertising.

74.     Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Classes under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants must pay restitution to Plaintiff and members of the Classes for unjust enrichment, as ordered by the Court.

**THIRD CLAIM FOR RELIEF**
**(Violations of the Consumer Fraud Laws on Behalf**
**of the Classes in States with Similar Laws)**

75.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

76.     Plaintiff brings this Count individually under the laws of Wisconsin and on behalf of all other persons who purchased merchandise in states having similar laws regarding consumer fraud and deceptive trade practices.

77.     Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they purchased merchandise from Kohl's.

78.     The consumer protection laws of the state in which Plaintiff and the other members of the Classes purchased Kohl's merchandise declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

79.     Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

      a.     Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1, *et seq.*;

b. Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §45.50.471, *et seq*.;

c. Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, *et seq*.;

d. California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.;

e. Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et seq*.;

f. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a, *et seq*.;

g. Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §2511, *et seq*.;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901, *et seq*.;

i. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*.;

j. Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390, *et seq*.;

k. Hawaii Unfair and Deceptive Practices Act, Haw. Rev. Stat. §480-1, *et seq*. and Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1, *et seq*.;

l. Idaho Consumer Protection Act, Idaho Code Ann. §48-601, *et seq*.;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq*.;

n. Kansas Consumer Protection Act, Kan. Stat. Ann. §50-623, *et seq*.;

o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110, *et seq.* and Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §365.020, *et seq.*;

p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401, *et seq.*;

q.  Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §205A, *et seq.* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211, *et seq.*;

r.  Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, §1, *et seq.*;

s.  Michigan Consumer Protection Act, Mich. Comp. Laws §445.901, *et seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat. 0§325F.68, *et seq.* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code Ann. §75-24-1, *et seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, *et seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. §30-14-101, *et seq.*;

x.  Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq.* and Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903, *et seq.*;

z.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1, *et seq.*;

aa.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-1, *et seq.*;

bb.     New Mexico Unfair Practices Act, N.M. Stat. Ann. §57-12-1, *et seq.*;

cc.     New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349, *et seq.*;

dd.     North Dakota Consumer Fraud Act, N.D. Cent. Code §51-15-01, *et seq.*;

ee.     Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§1345.02, 1345.03 and Ohio Admin. Code §§109:4-3-02, 109:4-3-03, 109:4-3-10;

ff.     Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §751, *et seq.*;

gg.     Oregon Unfair Trade Practices Act, Or. Rev. Stat §646.608(1)(e), (g);

hh.     Rhode Island Unlawful Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, *et seq.*;

ii.     South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.*;

jj.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §37-24-1, *et seq.*;

kk.     Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101, *et seq.*;

ll.     Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451, *et seq.*;

mm.     Washington Consumer Protection Act, Wash. Rev. Code §19.86.010, *et seq.*;

nn.     West Virginia Consumer Credit and Protection Act, W. Va. Code §46A-6-

101, *et seq*.; and

oo.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18, *et seq*.

80.     Kohl's merchandise constitutes products to which these consumer protection laws apply.

81.     In the conduct of trade or commerce regarding the pricing, advertising, marketing, and sale of their merchandise, Defendants engaged in one or more unfair or deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and each member of the Classes by means of the pricing and advertising of their merchandise that it was, among other things, being offered at a significant discount, as described herein.

82.     Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

83.     Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

84.     Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

85.     Plaintiff and the other members of the Classes did so rely.

86.     Plaintiff and the other members of the Classes purchased merchandise sold by Defendants who misrepresented the magnitude of the price discounts offered for the merchandise.

87.     Plaintiff and the other members of the Classes would not have purchased Kohl's merchandise at all, or would not have paid as much as they did, but for Defendants' deceptive and unlawful acts.

88.     As a result of Defendants' conduct, Plaintiff and the other members of the Classes

sustained damages in amounts to be proven at trial.

89.     Defendants' conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

A.     That the Court certifies each of the Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and his attorneys as Class Counsel to represent the members of the Classes;

B.     That the Court declares that Defendants' conduct violates the statutes and laws referenced herein;

C.     That the Court preliminarily and permanently enjoins Defendants from conducting business through the unlawful, unfair, or deceptive business acts or practices, untrue and misleading labeling and marketing, and other violations of law described in this Complaint;

D.     That the Court orders Defendants to conduct a corrective advertising and information campaign advising consumers that their merchandise does not have the characteristics, uses, benefits, and quality Defendants have claimed;

E.     That the Court orders Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or deceptive business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F.     That the Court orders Defendants to notify each and every individual and/or business, who purchased their merchandise, of the pendency of the claims in this action, in order

to give such individuals and businesses an opportunity to obtain restitution from Defendants;

G.     That the Court orders Defendants to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a deceptive business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

H.     That the Court orders Defendants to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendants, as a result of their acts or practices, as alleged in this Complaint;

I.     That the Court awards damages to Plaintiff and the Classes;

J.     That the Court enters an Order awarding costs, expenses, and reasonable attorneys' fees; and

K.     That the Court grants such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

DATED:  February 18, 2016          SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com

Erin Green Comite
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Joseph Pettigrew
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone:  619-233-4565
Facsimile:  619-233-0508
jpettigrew@scott-scott.com

E. Kirk Wood
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:  866-747-3905
ekirkwood1@bellsouth.net

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2016, I caused the foregoing to be electronically

filed with the Clerk of Court using the CM/ECF system, which will send notification of such

filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that

I caused the foregoing document or paper to be mailed via the United States Postal Service to the

non-CM/ECF participants indicated on the Manual Notice List.

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone:  212-223-6444
Facsimile:   212-223-6334
jguglielmo@scott-scott.com