# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MIGUEL MURILLO,
MICHAEL BAEHMAN, and
BONNIE BAEHMAN,
on Behalf of Themselves and All Others
Similar Situated,

                                  Plaintiffs,

v.

KOHL'S CORPORATION and
KOHL'S DEPARTMENT STORES, INC.,

                                  Defendants.

Case No. 16-CV-196-JPS

ORDER

On February 18, 2016, the plaintiffs filed suit, on behalf of themselves and all those similarly situated, against the defendants for purportedly engaging in a nationwide marketing scheme that is untrue, deceptive, and misleading to consumers. (*See generally* Docket #1). In many respects, this action parallels the allegations set forth in a case that was recently litigated before this Court by a California plaintiff. *See Le v. Kohls Dep't Stores, Inc.*, No. 15-CV-1171-JPS, 2016 WL 498083, at *1-*3 (E.D. Wis. Feb. 8, 2016).[1]

---

[1] The plaintiffs suggest that this Court's ruling on the defendants' motion to dismiss in *Le* has preclusive effect over certain issues raised herein. (Docket #26 at 5). However, the preclusion doctrine does not apply because the issues litigated in *Le* were not "determined by a valid and final judgment." *See Bobby v. Bies*, 556 U.S. 825, 834 (2009). Moreover, as the plaintiffs in this case never consolidated their case with *Le*—which has since been voluntarily dismissed—the Court will consider each argument presented by the defendants on its merits.

After the defendants (collectively "Kohls"[2]) filed a motion to dismiss (Docket #12), the plaintiffs filed an amended complaint on April 5, 2016 (Docket #14). In response, Kohls filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket #17). This motion to dismiss is now fully briefed and ripe for adjudication. (Docket #18, #26, #30). For the reasons stated herein, Kohls' motion will be denied in its entirety.

1.      BACKGROUND[3]

Before addressing the merits of the pending motion to dismiss, the Court will first provide an overview of: (1) the parties; (2) the factual background of this case; and (3) the plaintiffs' claims embodied in the amended complaint.

1.1      The Parties

Plaintiffs Miguel Murillo, Michael Baehman, and Bonnie Baehman are citizens of Wisconsin. (Docket #14 ¶¶ 10-12). Each plaintiff claims to have purchased one or more items from various Kohls stores located in the State of Wisconsin at a sale or discount price off of the "regular" or "original" item

---

[2]The defendants both spell the name of their corporations with an apostrophe, that is, "Kohl's." (*See* Docket #14 at 1); *see also* KOHL'S, http://www.kohls.com (last visited June 23, 2016). For grammatical simplicity, the Court will refer to the defendants collectively as "Kohls," without an apostrophe.

[3]Unless otherwise stated, the Court will draw the relevant facts from the plaintiffs' amended complaint. (*See* Docket #14); *see also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiffs' complaint."); *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (an "amended complaint bec[omes], upon its submission, the operative complaint in the case").

Case 2:16-cv-00196-JPS   Filed 06/24/16   Page 2 of 31   Document 36

prices. (Docket #14 ¶¶ 52-71). The plaintiffs further claim to have made these purchases at various times between March of 2015 and December of 2015. (*See* Docket #14 ¶¶ 52-71) (listing the specific dates, products, and locations in which the plaintiffs purchased the merchandise).

Defendant Kohl's Corporation is a Wisconsin company with its principal place of business located at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin. (Docket #14 ¶ 13). Defendant Kohl's Department Stores, Inc., is a Delaware company with its principal place of business also located at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin. (Docket #14 ¶ 14). The plaintiffs' claim that both of the defendants own and operate retail stores in Wisconsin. (Docket #14 ¶ 16). Kohls operates approximately 1,164 department stores in 49 states, including 40 stores in Wisconsin, and an e-commerce website (www.Kohls.com), in which it sells private label, exclusive, and national brand apparel, footwear, accessories, beauty, and home products. (Docket #14 ¶ 18).

### 1.2 Factual Overview

The plaintiffs claim that consumer fraud is afoot in Kohls stores across the nation. (Docket #14 ¶¶ 1-9, 25-38). More precisely, the plaintiffs allege that Kohls engages in an untrue, deceptive, and misleading marketing practice—both in its brick-and-mortar department stores and on its e-commerce website—that induces consumers to buy or pay more for merchandise than they would absent the unlawful conduct. (Docket #14 ¶¶ 1-9, 25-38). The fraud, according to the plaintiffs' theory, plays on a basic consumer motivation: the promise of a good deal. (Docket #14 ¶¶ 1-9, 25-38).

Similar to the allegations made previously before this Court in *Le*, the plaintiffs claim that Kohls advertises its goods at certain discounts off of

Case 2:16-cv-00196-JPS   Filed 06/24/16   Page 3 of 31   Document 36

"original" or "regular" prices. (Docket #14 ¶¶ 2, 22-23, 26). According to the plaintiffs, these "original" or "regular" prices, however, are misleading because they do not reflect the actual prices at which the products are routinely, if ever, sold to retail customers. (Docket #14 ¶¶ 2, 22-23, 26). Instead, the plaintiffs claim that Kohls' "regular" prices are either inflated or fabricated. (Docket #14 ¶¶ 2, 22-31). The amended complaint explains that the problem with this practice is that the inflated and/or fabricated prices advertised by Kohls give consumers the wrongful impression that they are getting a better deal for goods than they actually are in reality. (Docket #14 ¶¶ 1-9, 22-31). As a result of this purportedly deceptive discount price comparison scheme, the plaintiffs claim that Kohls encourages consumers to either: (1) buy products that they would never buy absent the "incredible savings"; or (2) pay more for products than they would have paid absent the illusory "deal." (Docket #14 ¶¶ 8-9, 31, 55).

Although the plaintiffs claimed to have purchased various items—including, but not limited to, juniors', boys' and women's clothing—at various Kohls stores in Wisconsin, they claim that Kohls operates its deceptive price comparison scheme on a national scale. (Docket #14 ¶¶ 29-30, 52-71). Further, they claim that this scheme "has been uniformly implemented as part of a concerted, years long, pervasive campaign to mislead consumers that is ongoing and continues to this day." (Docket #14 ¶ 124). The plaintiffs claim that this national scheme is effectuated by the "prominent" display of "regular" and "sale" prices on Kohls' in-store merchandise tags, online advertisements, and in-store price displays, such as that which is pictured below. (*See* Figure 1; Docket #14 ¶¶ 30, 46).



Figure 1: Sample Deceptive Price Display (Docket #14 ¶ 46)

The plaintiffs claim that Kohls also furthers this scheme by displaying false price comparisons on product receipts. (Docket #14 ¶ 30).

### 1.3    The Plaintiffs' Claims

On April 5, 2016, the plaintiffs filed an amended complaint alleging a putative class action on behalf of two potential classes, a Wisconsin Class and a Nationwide class. (Docket #1 ¶¶ 77-129). They alleged:

1.    A statutory violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 ("WDTPA") (Docket #14 ¶¶ 90-98), on behalf of a nationwide class, or, in the alternative, a Wisconsin class;

2.    A Wisconsin common law unjust enrichment claim on behalf of a nationwide class, or, in the alternative, a Wisconsin class (Docket #14 ¶¶ 99-106);

3.      A multi-state consumer fraud claim (Docket #14 ¶¶ 107-121); and

4.      A claim for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, *et seq.* (Docket #14 ¶¶ 122-129).

Kohls has moved to dismiss all of these claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (Docket #17). In support of its motion, Kohls argues that:

1.      The plaintiffs' WDTPA claim must be dismissed because it: (i) is based, in part, on representations that are not actionable; and (ii) is not pled with sufficient particularity;

2.      The plaintiffs cannot maintain a cause of action for unjust enrichment because they have not alleged a common law intentional misrepresentation claim;

3.      The plaintiffs lack statutory standing to pursue their multi-state claim, which is also improperly pled; and

4.      The plaintiffs' claim under the Declaratory Judgment Act is not justiciable, and, in any case, the Court should decline to exercise its discretion to hear the claim because it is duplicative.

(*See generally* Docket #18). The plaintiffs oppose all of these arguments. (Docket #26).

2.      LEGAL STANDARD

"A motion to dismiss pursuant to [Rule] 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state enough facts that, when accepted as true, 'state a claim for relief that is plausible on its face.'" *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Court must "tak[e] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

With respect to challenges made to subject matter jurisdiction, "[m]otions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014) (citing *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996)); *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (applying the same principle to motions under Rule 12(b)(6)). As when deciding a Rule 12(b)(6) motion, "[i]n the context of a motion to dismiss for lack of subject matter jurisdiction, [the Court must] accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002). However, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *See Burwell*, 770 F.3d at 588-89 (citing *Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987)).

3.      ANALYSIS

Kohls argues that all of the plaintiffs' claims should be dismissed under Rule 12(b)(1) and/or Rule 12(b)(6). (*See* Docket #17). The Court will discuss Kohls' motion on a claim-by-claim basis.

Case 2:16-cv-00196-JPS   Filed 06/24/16   Page 7 of 31   Document 36

### 3.1 WDTPA Claim

Kohls launches numerous attacks with respect to the propriety of the plaintiffs' WDTPA claim pursuant to Rule 12(b)(6). (*See generally* Docket #18). First, Kohls argues that the plaintiffs' claim fails as a matter of law because omissions, commercial puffery, post-transaction representations in receipts, and representations that Kohls might have made to third parties are not actionable statements under Section 100.18. (Docket #18 at 9-15). Second, Kohls argues that plaintiffs' Section 100.18 claim should be dismissed because it is not pled with sufficient particularity under Federal Rule of Civil Procedure 9(b). (Docket #18 at 15-21).

#### 3.1.1 Omissions, Puffery, Post-Transaction Representations and Representations to Third Parties

The "[Wisconsin Supreme] Court and the [Wisconsin] court of appeals have made clear that the purpose of § 100.18 is to deter sellers from making false and misleading representations in order to protect the public." *Novell v. Migliaccio*, 2008 WI 44, ¶ 30, 309 Wis. 2d 132, 145, 749 N.W.2d 544, 550. To that end, Section 100.18 provides that:

> [n]o…corporation…with intent to sell…merchandise…to the public for sale,…shall make, publish, disseminate, circulate, or place before the public,…in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station…an advertisement, announcement, statement or representation of any kind…which…is untrue, deceptive or misleading.

Wis. Stat. § 100.18(1). "Wisconsin courts divide a claim under Wis. Stat. § 100.18(1) into three elements: (1) the defendant made a representation to 'the public' with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially

Case 2:16-cv-00196-JPS   Filed 06/24/16   Page 8 of 31   Document 36

caused a pecuniary loss to the plaintiff." *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 662 (W.D. Wis. 2009) (citing *Novell*, 2008 WI 44, ¶ 44).

Though Section 100.18 is "extremely broad," *MBS-Certified Pub. Accountants, LLC v. Wisconsin Bell Inc.*, 2013 WI App 14, ¶ 16, 346 Wis. 2d 173, 186, 828 N.W.2d 575, 582, Wisconsin courts have placed certain limits on the type of actionable representations that may be remedied under the statute. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 40, 270 Wis. 2d 146, 169, 677 N.W.2d 233, 245. In *Tietsworth*, for example, the Wisconsin Supreme Court held that "[s]ilence—an omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1)." *Id.* at ¶ 41. In this way, "[t]he WDTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading." *Id.* Moreover, WDTPA claims cannot be premised on expressions of opinion or statements of mere "puffery." *Id.*; *see also Slane v. Emoto*, 582 F. Supp. 2d 1067, 1085 (W.D. Wis. 2008) ("A statement is not a representation of fact if it expresses mere opinions on quality, value, authenticity or other matters of judgment. Thus, a general statement that one's products are best is not actionable as a misrepresentation of fact.") (internal citations omitted) (internal quotation marks omitted).

Here, Kohls claims that the plaintiffs' complaint must be dismissed because the plaintiffs, in part, alleged that Kohls failed to disclose certain price-related information. (Docket #18 at 10) (citing Docket #14 ¶¶ 47, 54) ("Defendants failed to disclose to Plaintiffs…that their advertised 'regular' and/or 'original' reference prices were not true or bona fide regular or original prices."). Put another way, Kohls argues that the plaintiffs' amended complaint must be dismissed because it, at least in part, ties Kohls' liability

to certain price-related omissions that Kohls purportedly made to its customers. This argument, however, misunderstands the gravamen of the plaintiffs' amended complaint, which alleges that Kohls *affirmatively* represents false and misleading "regular" prices on its merchandise and in its advertisements. (Docket #14 ¶¶ 1-9, 22-31).

In a case such as this, omissions related to the goods' actual prices are not actionable, but are indeed relevant. As recognized by the Wisconsin Court of Appeals, the misrepresentation/omission interplay presents two sides of the same coin. *See Christense v. TDS Metrocom* LLC, 2009 WI App 21, 316 Wis. 2d 356 n.4, 763 N.W.2d 248 ("[A] nondisclosure of facts, combined with an affirmative representation that is undermined by the non-disclosed facts, may result in liability under § 100.18(1). In such situations, the existence of the undisclosed facts may show that the affirmative representation is untrue, deceptive, or misleading.").[4] *Christense* thus highlights the natural extension of the representation rule followed by Wisconsin Courts: that for every deceptive misstatement of fact, there will often be corresponding omission of truth. *Id.* Applying that logic here, the price-related misrepresentations that Kohls is purportedly making to consumers—namely, that its goods are "regularly" priced at certain values—are indeed related to corresponding omissions—namely, that the "regular" prices appearing on Kohls' goods are not accurate. The Court concludes that the affirmative

---

[4]In their reply, Kohls argues against the precedential value of the Court of Appeals' decision in *Christense*. However, contrary to Kohls' position, this Court does not view *Christense* as "overruling" *Tietsworth*. Though the passage quoted above is certainly dicta, this Court interprets the language as merely expounding upon the now well-accepted rule from *Tietsworth* that omissions, standing on their own, are not sufficient to support a WDTPA claim.

Case 2:16-cv-00196-JPS    Filed 06/24/16    Page 10 of 31    Document 36

representations allegedly being made by Kohls regarding its "regular prices"—both in brick-and-mortar stores and online—comprise the heart of the plaintiffs' WDTPA claim, and these representations are indeed actionable representations of fact under Section 100.18.

In addition, Kohls claims that various allegations made by the plaintiffs cannot support a Section 100.18 claim because the statements constitute mere "puffery," which is not actionable under the WDTPA. (Docket #18 at 13) (citing Docket #14 ¶¶ 8, 21, 23, 25, 26, 29, 72, 96, 104, 113) (describing allegations that Kohls: (1) "prominently touts its 'incredible savings' in its public statements"; (2) represents that it offers "huge discount[s]," "meaningful discount[s]," "significant discount[s]," "significant savings"; and (3) offers products sold at "substantially higher" or "far higher" prices than at other places). "Puffery has been defined as 'the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.'" *Tietsworth*, 2004 WI 32, ¶ 41 (citing *State v. Am. TV*, 146 Wis.2d 292, 301-02, 430 N.W.2d 709 (1988)).

Again, however, Kohls' argument misses the mark. Viewed in isolation, Kohls' statements about "incredible savings" and the like may indeed constitute "puffery." *See, e.g., id.* at ¶ 44 (concluding that the defendants' representations that its motorcycles were of "premium quality" and a "masterpiece" were non-actionable). Elsewhere in the amended complaint, however, the plaintiffs make clear that the allegedly false "regular" prices that Kohls advertises, and the comparison of those "regular" prices to Kohls' "sale" prices, comprise the core of the actionable misrepresentations in this case. (Docket #14 ¶¶ 1-9, 22-31). To be sure, Kohls

cannot be expected to exempt itself from standard reliance on commercial puff. But, taken as a whole, the Court concludes that the plaintiffs' amended complaint alleges sufficient representations of fact made by Kohls' to support the WDTPA claim. *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (counseling courts not to scrutinize allegations in complaints in isolation).

Beyond the requirement that a defendant make affirmative representations that go beyond mere puffery in order to maintain an action under Section 100.18, the plaintiff must also be a member of the "public" in order to sue under the statute. *See Fricano v. Bank of Am. NA*, 2016 WI App 11, ¶ 28, 366 Wis. 2d 748, 875 N.W. 2d 143. A plaintiff remains a member of "the public" unless a particular relationship exists between him or her and the defendant." *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 26-27, 301 Wis. 2d 109, 125, 732 N.W.2d 792, 800 ("[A] plaintiff is no longer a member of 'the public' for the purpose of Wis. Stat. § 100.18(1) once he or she has entered into a contract to purchase the offered item."). As previously explained by this Court, whether "the plaintiff is (or is not) a member of the public depends both on: (1) timing (*i.e.*, were the parties bound by contract when the defendant made the alleged misrepresentation); and (2) the items offered for sale (*i.e.*, were the parties bound by contract for the goods/services at issue)." *Med. Coll. of Wisconsin Inc. v. Attachmate Corp.*, No. 15-CV-151-JPS, 2016 WL 697145, at *4 (E.D. Wis. Feb. 19, 2016) (internal citations omitted).

The Court rejects Kohls' argument that the plaintiffs fail to state a WDTPA claim because they were not members of the "public" at the time the alleged representations were made. In the amended complaint, the plaintiffs claim that they were *induced* to buy Kohls' merchandise based on illusory

sales. (Docket #14 ¶¶ 1, 23, 29). Further, the plaintiffs claim that Kohls' deceptive advertising scheme was communicated to consumers such as themselves within the context of in-store price displays and price tags which "prominently" displayed Kohls' "regular" and "sale" prices. (Docket #14 ¶¶ 1, 23, 28, 30, 45-46, 50, 52, 53, 56, 62, 68). Accordingly, the plaintiffs alleged inducement to buy these products, or pay more for these products, occurred *prior* to purchase, by virtue of the plaintiffs' viewing of Kohls' in-store advertising and/or price tags. (*See* Docket #14 ¶ 50) ("Plaintiffs were each confronted with…the price tags…on the items they purchased and the in-store displays from Defendants, which were falsely represented to be 'regular' or 'original' prices. Plaintiffs reasonably believed…that the 'regular' or 'original' price represented the price at which each respective item regularly sold at Kohl's and that they were receiving a significant discount….").

Kohls' argument that post-sale representations—namely, those which appeared on the plaintiffs' receipts—are not actionable cannot be fairly debated. *See K & S Tool & Die Corp.*, 2007 WI 70, ¶ 26-27. Though the Court agrees with this point as a general proposition—the plaintiffs could not, after all, be deceived into purchasing a product based on the content of the receipt if they had already purchased the merchandise—the argument has no bearing on the viability of the plaintiffs' WDTPA claim. Here, the plaintiffs have sufficiently and properly claimed that *prior* to purchasing the goods in question, both they and the putative class members were induced to buy products based on allegedly deceptive price comparisons that they saw on Kohls' price tags and advertisements. (Docket #14 ¶¶ 1, 23, 28-30, 45-46, 50, 52, 53, 56, 62, 68). While this purported scheme continued by way of

misrepresentations appearing on receipts, the plaintiffs' pre-sale allegations of fraud are sufficient to deem them members of "the public" such that they are protected under the WDTPA.

Finally, Kohls claims that, to the extent the plaintiffs rely on representations that Kohls made to third parties, those representations cannot sustain the WDTPA claim. (Docket #18 at 14-15). In support of this argument, Kohls cites to one, non-binding district court opinion in which the court concluded that Section "100.18 does not provide a cause of action for misrepresentations made to non-parties." (Docket #18 at 15). Even accepting Kohls' legal argument as true, the Court cannot agree that the amended complaint's citation representations made to third parties—as reflected in a consumer marketing study—fatally undermines the WDTPA claim. The plaintiffs here have sufficiently alleged: (1) that Kohls made representations of fact regarding its "regular" prices to the plaintiffs and the public both in-store and online with the intent to induce purchasing behavior; (2) that Kohls' representations about its "regular" prices and, therefore, its "sales," were untrue, deceptive, and misleading; and (3) that the alleged price comparison representations caused a pecuniary loss[5] to the plaintiffs and certain national consumers." *See Novell*, 2008 WI 44, ¶ 44. Though the consumer marketing study cited in the amended complaint may not serve as the entire foundation for the Section 100.18 claim, it certainly helps paint the picture of the deceptive practices that the plaintiffs allege on behalf of a putative nationwide class.

---

[5]Again, this pecuniary loss resulted because the plaintiffs claim that they: (1) would not have purchased Kohls' goods absent the fraud; and/or (2) would have paid less for Kohls' goods had they been apprised of the actual item prices. (Docket #14 ¶¶ 8-9, 31, 55).

In sum, the plaintiffs' allegations that Kohls made affirmative and false representations of fact regarding its "regular" and "original" prices to plaintiffs and other national consumers prior to the purchase of goods are actionable statements that support the WDTPA claim.

### 3.1.2 Particularity

Kohls also argues that the plaintiffs' WDTPA claim fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). According to Rule 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "The particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citing *Berman v. Richford Indus., Inc.*, 1978 WL 1104, at *5 (S.D.N.Y. July 28, 1978)). "In adding flesh to the bones of the word particularity, [the Seventh Circuit] ha[s] often incanted that a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Id.* (citing *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). "Yet, because courts and litigants often erroneously take an overly rigid view of the formulation, we have also observed that the requisite information—what gets included in that first paragraph—may vary on the facts of a given case." *Id.*; *see also Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998) (finding that the Rule 9 inquiry requires flexibility when information lies outside of plaintiff's control); *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 285 (7th Cir. 1996) (Ripple, J., dissenting) (noting that reasonable minds can and will differ on the adequacy of a given fraud averment). As neither party disputes the applicability of Rule 9(b), the Court

Case 2:16-cv-00196-JPS   Filed 06/24/16   Page 15 of 31   Document 36

will apply it to the plaintiffs' claim. (Docket #18 at 15-21; Docket #26 at 6-11); *see also Miller v. Vonage Am., Inc.*, Case No. 14-CV-379, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015) (applying Rule 9 to a WDTPA claim).

The Court concludes that the plaintiffs have alleged all that is required of them at the pleading stage, even under the more rigorous standard set forth in Rule 9(b). *See, e.g.*, *Am. Orthodontics Corp. v. Epicor Software Corp.*, 746 F. Supp. 2d 996, 999 (E.D. Wis. 2010) (explaining that Rule 9(b) was satisfied where the "pleading provides the names of the employees of defendant who allegedly made the fraudulent representations, the times and places on which they allegedly made the statements, how they made the statements, and the statements' contents"). The amended complaint alleges that both of the defendants "own and operate retail stores" in which they implement the allegedly deceptive price comparison scheme. (Docket #14 ¶ 16). Contrary to Kohls' assertion regarding "formulaic recitations" of the alleged fraud, the plaintiffs provide specific details as to: (1) which Kohls stores the plaintiffs visited; (2) the dates in which the plaintiffs visited those particular department stores; (3) the items that the plaintiffs purchased; (4) the "regular" or "original" prices of the purchased merchandise; and (5) Kohls' "sale" prices on that merchandise. (Docket #14 ¶¶ 52-76). The content of the alleged misrepresentations, according to the amended complaint, are Kohls' allegedly false "original" prices, which were, and continue to be, fabricated and/or inflated. (Docket #14 ¶¶ 1-9, 22-31, 38, 47-51). These prices, which appear on in-store advertisements, item price tags, online advertisements, and print advertisements, in turn allow Kohls to leverage false sale and

comparison pricing so as to "dupe customers into thinking they're getting a good deal."[6] (Docket #14 ¶¶ 7, 30, 46, 50).

In essence, therefore, due to Kohls' allegedly false price comparisons, the plaintiffs claim that they were induced to buy the products that are outlined in the complaint. Were it not for the allegedly illusory deals, the plaintiffs claim that they would not have bought, or would not have paid as much for, those goods. (Docket #14 ¶¶ 8, 10-12, 31, 55). Thus, the pleading, taken as a whole, sufficiently alleges the who, what when, where, and how of Kohls' purportedly deceptive practices.[7] *Tellabs, Inc.*, 551 U.S. at 323.

In addition, Kohls argues that the amended complaint fails to meet Rule 9(b)'s heightened pleading standard because it "lumps" the defendants together and fails to notify them of the manner in which they participated in

---

[6]Kohls also argues that the WDTPA claim fails under Rule 9(b) because it does not allege whether the plaintiffs relied on "original" prices or "sale" prices when purchasing merchandise. (Docket #18 at 19). However, Kohls supplies the Court with no authority to support the proposition that such a detail needs to be alleged in a false price comparison case. Based on the Court's reading of Section 100.18, the plaintiffs' reliance on one price or the other may be irrelevant, so long as they relied on advertisements in which allegedly false misrepresentations regarding the "original" prices of the merchandise appeared. *See* WIS. STAT. § 100.18. As detailed above, the amended complaint sufficiently alleges that Kohls published false and/or inflated prices when advertising its goods; this then purportedly led customers to believe that the "sale" prices at which they purchased the goods were more significant reductions that they were in reality. (Docket #14 ¶¶ 1-9, 21-31, 45-51). Whether or not the plaintiffs allegedly relied on the "original" price or the "sale" price is therefore immaterial because it is the *difference* between these two figures that creates the false price comparison.

[7]Kohls also attacks a "catchall" paragraph that the plaintiffs inserted in the amended complaint regarding "other purchases" that each of them made at Kohls. (Docket #18 at 20-21). However, as the Court has found that the amended complaint's description of the fraud—including allegations of specific instances when the plaintiffs shopped at Kohls—satisfies Rule 9(b), the Court need not rely on this "catchall paragraph." Kohls' argument is thus irrelevant.

the alleged fraud. (Docket #18 at 16-19). As a matter of law, Kohls is correct that plaintiffs who allege fraud claims "must 'plead sufficient facts to notify each defendant of his alleged participation in the scheme.'" *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705 (7th Cir. 2015) (internal citations omitted). Moreover, Kohls rightly highlights the general principle that parent corporations cannot be held liable for the acts of their subsidiaries. (Docket #30 at 5) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

Contrary to Kohls' assertion, however, the Court finds that the plaintiffs: (1) have sufficiently alleged both of the defendants' roles in the fraud; and (2) have not simply named the defendants based on their alleged status as related entities. First, in terms of their participation, the plaintiffs allege that *both* of the defendants *own and operate* retail stores in which the deceptive conduct occurs; thus, from the face of the amended complaint, it appears that both of the defendants are being sued for "plac[ing] before the public" misrepresentations related to merchandise prices. (Docket #14 ¶ 16). Second, the amended complaint does not allege that fraud committed by one of the defendants somehow imputes to the other based on their relationship to each other. Indeed, the extent to which the defendants are related and/or have varying degrees of control over the allegedly deceptive marketing scheme are facts which will be fleshed out during discovery.[8] *See Emery*, 134 F.3d at 132. As it is written, the Court finds that the defendants, as owners

<hr/>

[8]The plaintiffs argue in their opposition brief that: (1) Kohls' disclosure statement; and (2) Kohls' answer to the complaint in *Le*, identify Kohls Corporation as being the parent of Kohls Department Stores. (Docket #26 at 10). However, as courts are confined to the operative pleading and attachments thereto for the purpose of a Rule 12(b)(6) motion, the Court may not consider these extraneous materials. *See Rosenblum*, 299 F.3d at 661; *Duda,* 133 F.3d at 1057.

and operators of department stores in which the allegedly deceptive advertisements appear, have been sufficiently apprised under Rule 9 of their roles in the fraud.[9] Kohls' motion to dismiss the amended complaint on the grounds that it was not pled with particularity will, therefore, be denied.

### 3.2    Unjust Enrichment Claim

Next, Kohls argues that the plaintiffs unjust enrichment claim must be dismissed for failure to state a claim pursuant to Rule 12(b)(6). (Docket #18 at 21-23). "The elements of an unjust enrichment claim are: (1) conferral of a benefit[;] (2) with the knowledge of the party benefitted[;] and (3) under circumstances where it is inequitable to permit the party to retain the benefit without payment." *U.S. ex rel. Roach Concrete, Inc. v. Veteran Pac., JV*, 787 F. Supp. 2d 851, 858 (E.D. Wis. 2011); *accord Watts v. Watts*, 137 Wis. 2d 506, 531, 405 N.W.2d 303, 313 (1987). "In Wisconsin the quasi-contractual theories of quantum meruit and unjust enrichment are legal causes of action grounded in equitable principles and can be invoked only in the absence of an *enforceable* contract." *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011) (emphasis added). A purchase transaction, for example, forms a contract between the buyer and the seller. *Meyer v. The Laser Vision Inst.*, 2006 WI App 70, ¶ 22, 290 Wis. 2d 764, 779, 714 N.W.2d 223, 230 (holding that the parties' purchase transactions formed a "valid and enforceable [contract], thereby barring [the plaintiff's] equitable claims"). Here, Kohls argues that the

---

[9]Kohls also: (1) compares the original complaint to the amended complaint; and (2) incorporates the plaintiffs' discovery materials in its reply brief. (Docket #30 at 6-7). As described above, the Court will not consider arguments based on materials that have not been incorporated by reference and exist outside of the amended complaint for the purpose of ruling the pendant Rule 12(b)(6) motion. *See Rosenblum*, 299 F.3d at 661; *Duda,* 133 F.3d at 1057.

plaintiffs' unjust enrichment claim must be dismissed because the plaintiffs entered into express purchase contracts with the defendants when they purchased Kohls' merchandise. (Docket #18 at 21-23).

However, as both parties concede, where there is *not* an underlying, enforceable contract between the parties, an unjust enrichment claim may lie. *Cf. Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) ("A contract induced by fraud is voidable at the option of the party whose assent was fraudulently induced…'If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.'") (citing RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981)). Nonetheless, Kohls argues that because the plaintiffs have not alleged an intentional misrepresentation claim—thereby entitling them to rescission of their purchase contracts—the plaintiffs cannot, as a matter of law, maintain their unjust enrichment claim. (Docket #18 at 21-23). In support of this theory, Kohls relies on *Mueller v. Harry Kaufmann Motorcars, Inc.*, 2015 WI App 8, 359 Wis. 2d 597, 859 N.W.2d 451, *review denied sub nom. Mueller v. Harry Kaufmann Motorcars*, 2015 WI 47, 366 Wis. 2d 60, 862 N.W.2d 899.

On the one hand, the Court agrees with the defendants that, insofar as Kohls and the plaintiffs have formed *enforceable* contracts with regard to the purchase of the goods in question, no common law unjust enrichment claim will lie. *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 476 (7th Cir. 2009), *as amended* (Mar. 18, 2009) ("Generally speaking, if the parties have made an enforceable contract and there is no *ground* for rescission, then breach-of-contract principles will govern the dispute. In the absence of an enforceable contract, however, a plaintiff may turn to

quasi-contractual theories of relief.") (emphasis added). On the other hand, the Court disagrees with Kohls that *Mueller* requires this Court to dismiss the plaintiffs' unjust enrichment claim because they have not pled an intentional misrepresentation claim.

"Under Wisconsin principles of equity, a party induced to enter into a contract by the other party's misrepresentation may unilaterally rescind the contract if three essential elements are shown: (1) a misrepresentation of fact; (2) that was material or fraudulent; (3) upon which the recipient justifiably relied." *CMFG Life Ins. Co. v. RBS Sec. Inc.*, No. 12-CV-037-WMC, 2013 WL 4483068, at *4 (W.D. Wis. Aug. 19, 2013) (citing *First Nat. Bank and Trust Co. of Racine v. Notte*, 97 Wis.2d 207, 222, 293 N.W.2d 530, 538 (Wis.1980); *Whipp v. Iverson*, 43 Wis.2d 166, 168, 171, 168 N.W.2d 201, 202, 204 (Wis. 1969)); *see also Arjay Inv. Co. v. Kohlmetz*, 9 Wis. 2d 535, 538, 101 N.W.2d 700, 702 (1960) ("Under the theory of unjust enrichment it is immaterial whether the defendant and the plaintiff entered into a void contract. The plaintiff is not seeking to have the defendant perform the alleged contract. It is seeking the return of its money."). In *Mueller*, the plaintiff claimed that the defendant misrepresented the condition of a 1995 Mercedes–Benz. *Mueller*, 359 Wis. 2d 605. She sought rescission of the purchase contract and/or a refund of the full purchase price of the vehicle, pursuant to Wis. Stat. §§ 100.18 and 218.0116(1)(f) and common law intentional misrepresentation principles. *Id.* On appeal from a directed verdict for the defendant, the Court was asked to decide whether: (1) rescission and/or refund were available remedies  for statutory misrepresentation under Section 100.18; (2) the sufficiency of the evidence with respect to the common law misrepresentation claim; (3) the

Case 2:16-cv-00196-JPS   Filed 06/24/16   Page 21 of 31   Document 36

plaintiff failed to prove benefit-of-the-bargain damages; and (4) the plaintiff was permitted to testify as to the car's value. *Id.* at 604-05.

In support of its position, Kohls cites to the portion of the Court of Appeals' opinion in which it discussed remedies under Section 100.18. (Docket #18 at 22-23). Based on the plain meaning of Section 100.18 and the purpose of the statute, the court concluded that "a 'pecuniary loss' can include monetary remedies like the cost of repair or diminution in value and may also include the possibility of a full refund of the purchase price. A 'pecuniary loss' does not, however, include rescission, as a non-monetary remedy." *Id.* at 616. The court went on to describe that "[p]laintiffs can, however, receive rescission as a remedy for intentional misrepresentation when the misrepresentation is 'material.'" *Id.* at n.4.

Contrary to Kohls' position, the Wisconsin Court of Appeals in *Mueller* did not state that plaintiffs *must* claim intentional misrepresentation in order to be entitled to recision. Rather, as previously explained by the Wisconsin Supreme Court, "where *grounds* for avoidance of a contract exist, the aggrieved party must elect between rescinding the contract, or affirming the contract and seeking damages." *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 67, 262 Wis. 2d 32, 62, 662 N.W.2d 652, 666. In this case, the plaintiffs appear to be proceeding in equity and suing off the contract for restitutionary damages. And, the Court concludes that the plaintiffs have sufficiently pled "grounds" to avoid their purchase contracts based on intentional misrepresentation.

Therefore, at this juncture of the litigation, the Court finds the most prudent course of action is to permit the plaintiffs' equitable unjust enrichment claim to proceed based on the plaintiffs' allegations that any

purchase contracts between them and Kohls may be unenforceable. *See La Crosse Cty. v. Trinity Indus., Inc.*, No. 15-CV-117-JDP, 2016 WL 1274623, at *10 (W.D. Wis. Mar. 31, 2016) (rejecting the defendants' motion to dismiss an unjust enrichment claim on the grounds that an express contract allegedly existed between the parties because "[a]t this point in the case, dismissing Claim 8 makes little practical sense. Much like the cases on which Trinity relies, the court would have to dismiss this claim without prejudice and allow La Crosse County to reinstate it later, should the court determine that no contract exists between the parties."); *Le*, 2016 WL 498083, at *15-*16.

### 3.3    Multi-State Consumer Claim

The plaintiffs' third claim for relief is a count which they bring "individually under the laws of Wisconsin and on behalf of all other persons who purchased merchandise in states having similar laws regarding consumer fraud and deceptive trade practices." (Docket #14 ¶ 108). They caption this claim as one brought for "[v]iolations of the [c]onsumer [f]raud [l]aws on [b]ehalf of the [c]lasses in [s]tates with [s]imilar [l]aws." (Docket #14 at 26). Kohls argues the plaintiffs do not have statutory standing to bring this claim because they do not fall within the "zone of interests" of other states' statutes. (Docket #18 at 24). Thus, according to Kohls, because the plaintiffs "do not even attempt to state a claim as individuals under any other law," they should not be able to sue under other states' laws on behalf of other putative class members. (Docket #18 at 25).

The Seventh Circuit has explained that the term "statutory standing" has "confusing usage" in the case law. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). However, "[i]t usually refers to a situation in which, although the plaintiff[s] ha[ve] been injured and would benefit from

a favorable judgment and so ha[ve] standing in the Article III sense, [they are] suing under a statute [or statutes] that w[ere] not intended to give [them] a right to sue; [in other words, they are] not within the class intended to be protected by it." *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998); *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Harzewski v. Guidant Corp.*, 489 F.3d 799, 803–04 (7th Cir. 2007)).

While Kohls' position may be relevant at a later date, the Court finds the statutory standing argument premature. *See Payton v. Cty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) ("[C]lass certification issues…pertain to statutory standing.…") (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010) ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their *own* behalf, but are *only seeking to represent* other, similarly situated consumers in those states.") (emphasis added).

Contrary to Kohls' reading of the amended complaint, the plain language of the plaintiffs' third claim states that it is one that the plaintiffs are bringing *"individually under the laws of Wisconsin* and *on behalf of"* a putative class of persons living in other states that were similarly injured. (Docket #14 ¶ 108) (emphasis added). In other words, the Court does not view the plaintiffs' *individual* claims to be ones which they are asserting under the laws of *other* states.[10] (Docket #14 ¶¶107-121). There can be no doubt—and Kohls

---

[10]The Court agrees with Kohls that the amended complaint's reference to "the Classes" is not the most clear convention; however, the plaintiffs do refer to "proposed Classes as defined below," which presumably refers to both the "Nationwide Class" and "Wisconsin Class." (Docket #14 ¶¶ 8, 78-79).

does not contest—that the plaintiffs have statutory standing to sue under Wisconsin law, where they live and have been subject to the alleged misrepresentations that comprise the core of this case.

The allegations in the amended complaint further detail the plaintiffs' assertion that they are purportedly able to represent individuals who have been similarly injured by Kohls' allegedly fraudulent marketing scheme. (Docket #14 ¶ 77-89, 113-121); *see also In re Grand Theft Auto Video Game Consumer Litig.*, No. 06–MD–1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006) ("The relevant question…is…whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. This question is…appropriately answered through the class certification process."). The question of which law will apply to the plaintiffs' third claim, and whether the plaintiffs are adequate representatives of those putative class members, will be proper subjects of a motion made pursuant to Rule 23.[11] *Cf. In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3)."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action,

[11] Kohls' brief in support of the motion to dismiss also makes a one-sentence reference to the plaintiffs' purported failure to properly plead claim three under Rule 8 and/or 9. (Docket #18 at 25). The Court disagrees. On the one hand, as discussed at length above, the Court finds that the plaintiffs' individual fraud claims are properly pled under Wisconsin law. (*See supra*, Part 3.1.2). The elements of other state law claims, on the other hand, may ultimately not be relevant—depending on the outcome of the Rule 23 certification process. At this stage, the Court concludes that the plaintiffs properly pled Wisconsin law claims, in combination with the allegations regarding Kohls' nationwide scheme, satisfy federal pleading requirements for the purpose of claim three.

variations in state law may swamp any common issues and defeat predominance.").

At this juncture, the Court has not had an occasion to determine which law will apply to the plaintiffs' third claim for relief. For now, the Court is satisfied that plaintiffs have standing and have properly pled their individual claims under Wisconsin law and on behalf of a putative class of persons who have been similarly injured.[12] Kohls' argument regarding other states' hostility towards consumer class actions will thus become relevant at the time the parties argue class certification. The Court will accordingly deny Kohls' motion to dismiss count three.[13]

### 3.4 Declaratory Judgment Claim

Finally, Kohls argues that this Court should dismiss the plaintiffs' request for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, because the plaintiffs failed to allege facts showing that there is an "actual controversy" to sustain the claim. (Docket #18 at 7-8). In addition, Kohls argues that the Court should decline to exercise its discretion to hear this claim because the WDTPA claim would provide adequate relief to address the harms alleged. (Docket #18 at 8-9). The Court disagrees with Kohls and

---

[12]In a footnote of its reply brief, Kohls also argues that the plaintiffs' third claim for relief under Wisconsin law is redundant. (Docket #30 at 25 n.8 ). As this argument was not presented in Kohls' opening brief, the Court will deem it waived. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) ("The argument is more developed in [the] reply brief, but this is too little, too late, for 'arguments raised for the first time in a reply brief are [also] waived.'") (internal citations omitted).

[13]Because the Court will address any potential tension between state law and the federal rules at the time of certification, the Court need not opine on the effect of the Supreme Court's disjointed opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010), at this time.

finds that a justiciable controversy between the parties exists in this case, and the Court will permit the plaintiffs to proceed past the pleading stage on their declaratory judgment claim.

"The Declaratory Judgment Act gives courts of the United States discretionary power to issue declarations regarding 'the rights and other legal relations of any interested party seeking such declaration.'" *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (citing 28 U.S.C. § 2201). "[H]owever…courts may not exercise this discretionary power in the absence of an 'actual controversy' between the parties." *Id.* "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007) (internal citations omitted). Moreover, "[i]t must be a real and substantial controversy…as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (internal citations omitted).

The Court has no doubt that this case presents an actual controversy for the purpose of maintaining an action under 28 U.S.C. § 2201. Here, even though the plaintiffs may not be the paradigmatic defendants in a traditional coercive suit, seeking, for example, to preempt an impending law suit, the plaintiffs claim that they have been, and continue to be, subject to a deceptive marketing scheme. (Docket #14 ¶¶ 1-9, 21-31, 45-76). The plaintiffs claim that the defendants have "uniformly implemented" this scheme "as part of a concerted, years long, pervasive campaign to mislead consumers that is ongoing and continues to this day." (Docket #14 ¶¶ 30, 124). The nature of the alleged fraud is Kohls' publication of fictitious and/or inflated "regular" or "original" prices on merchandise, which causes consumers to believe they are getting a better "deal" than they actually are in reality. (Docket #14 ¶¶ 1-

9, 21-31, 45-76). Further, the plaintiffs claim that the deceptive price scheme has harmed, and continues to harm, themselves and consumers around the nation by inducing them to buy products, or pay more for products, that they would not buy, or pay as much for, absent the illusory "sales." (Docket #14 ¶¶ 1-9, 21-31, 45-76). In light of these allegations regarding Kohls' longstanding, continuous, and pervasive price comparison strategies, the Court concludes the amended complaint demonstrates that the parties in this case have adverse legal interests and that the plaintiffs have pled a concrete, justiciable controversy.[14]

Beyond this constitutional argument, Kohls also argues that this Court should exercise its discretion to dismiss the declaratory judgment claim. (Docket #18 at 8-9). In situations like these, the Seventh Circuit has relied upon a series of factors to help determine whether district courts should exercise jurisdiction over declaratory judgment cases. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994). The factors include:

(1)    Whether the judgment would settle the controversy;

(2)    Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

_____

[14]Kohls also argues, albeit only in a footnote, that for the same reasons the plaintiffs do not present a justiciable controversy, they lack Article III standing. (Docket #18 at 8 n.4). However, as discussed above, the Court concludes that both the immediate and ongoing nature of the alleged harms in this case present both past and ongoing injuries of a sufficiently concrete nature that this Court can remedy. *See Schirmer v. Nagode*, 621 F.3d 581, 588 (7th Cir. 2010) (explaining that while "an isolated" ordinance violation was not sufficient to confer standing, "if we had a record showing a *persistent pattern* of similar police misconduct" the plaintiffs "might be able to show that they were entitled to injunctive relief") (emphasis added).

(3)     Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4)     Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and

(5)     Whether there is an alternative remedy that is better or more effective.

*Id.* (citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991)). In this case, Kohls' only argument as to why the plaintiffs' declaratory judgment claim should be dismissed relates to the fifth consideration, *i.e.*, whether "an alternative remedy that is better or more effective" will resolve the claim. *Id.*

While the rendition of declaratory relief may be properly declined in circumstances where alternative remedies exist, the Court finds the most prudent path is to deny Kohls' motion to dismiss the declaratory judgment claim. Here, declaratory and/or injunctive relief would indeed: (1) settle the parties' ongoing/future dispute regarding Kohls' allegedly deceptive marketing practices; and (2) clarify for the parties and putative class members the legality of Kohls' practices. *See id.* There is no evidence in this case of "procedural fencing"; nor is there any allegation that deciding this case would upset the careful balance between state and federal jurisdiction. *See id.*

Rather, as Kohls concedes, "[b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying claims." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Though

the Wisconsin legislature has chosen not to endow Wisconsin state courts with the power to grant injunctive and/or declaratory remedies for a Section 100.18 violation, it is this Court's prerogative to exercise the authority that Congress has granted to it pursuant to 28 U.S.C. § 2201. *Id.* at 288-90; *see also Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 105-06 (1945) ("State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts. Contrariwise, a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it."). Moreover, while restitution flowing from the plaintiffs' Section 100.18 claim may remedy pecuniary losses from Kohls' *past* unlawful conduct, Section 100.18 will not enjoin any allegedly wrongful *future* conduct. *See* Wis. Stat. § 100.18(11)(a) ("Actions to enjoin violation of this section or any regulations thereunder may be commenced and prosecuted by the department [of agriculture, trade and consumer protection] in the name of the state in any court having equity jurisdiction.") Accordingly, the Court finds the wiser exercise of discretion, at least at this stage in the litigation, will be to deny Kohls' motion to dismiss the declaratory judgment claim.

4.    CONCLUSION

For the reasons stated herein, the Court concludes that Kohls' motion to dismiss (Docket #17) should be denied in its entirety. The plaintiffs: (1) adequately pled their WDTPA claim; (2) may proceed on their unjust enrichment theory given the potentially unenforceable nature of their purchase contracts; (3) at this time, have statutory standing to pursue their multi-state claim; and (4) maintain an "actual" controversy with the defendants for the purpose of the declaratory judgment claim. Though

Case 2:16-cv-00196-JPS   Filed 06/24/16   Page 30 of 31   Document 36

certain matters related to statutory standing and the exercise of the Court's discretion to grant declaratory relief may be appropriately reevaluated at a later date, the Court is satisfied, at this juncture, that Kohls' motion should be denied.

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss the amended complaint (Docket #17) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the defendants' motion to dismiss the original complaint (Docket #12) be and the same is hereby DENIED as moot.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge