UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MIGUEL MURILLO, MICHAEL BAEHMAN, and BONNIE BAEHMAN<br><br>Plaintiffs,<br><br>v.<br><br>KOHL'S CORPORATION and KOHL'S DEPARTMENT STORES, INC.,<br><br>Defendants. | Case No. 16-CV-196-JPS<br><br><br>ORDER |

Before the Court is the plaintiffs' motion to compel certain discovery pursuant to Federal Rules of Civil Procedure 26 and 37(a). (Docket #38). In their motion, the plaintiffs argue that the Court should compel: (1) the production of various documents related to the processes by which the defendants' establish merchandise prices;[1] (2) the production of documents that contain the defendants' nationwide transactional and sales data;[2] (3) the testimony of a Rule 30(b)(6) witness(es) regarding the defendants' data retention and IT systems;[3] and (4) the production of documents that have been involved and/or produced in related legal proceedings against the

---

[1] This request corresponds to requests nos. 7-9 of the Plaintiffs' First Set of Requests for Production Documents. (Docket #40, Ex. 1 at 8).

[2] This request corresponds to requests nos. 12-20 of the Plaintiffs' First Set of Requests for Production Documents. (Docket #40, Ex. 1 at 8-10).

[3] This request corresponds to the topics nos. 1-3 of the Plaintiff's Rule 30(b)96) Notice of Videotaped Deposition. (Docket #40, Ex. 2 at 7-8).

defendants in California.[4] (*See generally* Docket #39). The plaintiffs certify that—pursuant to Federal Rule of Civil Procedure 37(a)(1)—they have properly met and conferred with opposing counsel regarding these discovery issues prior to seeking intervention of the Court. (Docket #39 at 24).[5]

The plaintiffs' motion to compel is now fully briefed. (Docket #38, #39, #41, #45). As explained in further detail below, the plaintiff's motion will be granted in part and denied in part.

1. BACKGROUND

On February 18, 2016, the plaintiffs filed a complaint challenging the defendants' purportedly false and misleading marketing practices. (Docket #1); *see also* (Docket #14) (first amended complaint). Specifically, the plaintiffs allege that the defendants have engaged in a pervasive, nationwide scheme

---

[4]These proceedings include that of *Russell v. Kohl's Dep't Stores, Inc.*, No. 5:15-CV-1143-RGK-SP (C.D. Cal filed June 11, 2015) and *Chowning v. Kohl's Dep't Stores, Inc.*, 2:15-CV-8673-RGK-SP (C.D. Cal filed Nov. 5, 2015). For the sake of clarity, the Court notes that the plaintiffs' brief states the case number of *Chowning* is "3:15-CV-1624-JAH-WVG." (Docket #39 at 11). The brief also states that *Chowning* is pending in the Central District of California. (Docket #39 at 11). According to the Court's search, however, Ms. Chowning's case in the Central District of California (Case No. 2:15-CV-8673-RGK-SP) arose out of Ms. Chowning's case in the Southern District of California (Case No. 3:15-CV-8673-JAH-WVG) (Docket #20) (granting the defendant's motion to transfer venue). Thus, despite the plaintiffs' error in the case name, the Court will consistently refer to the *Chowning* case by its active designation: *Chowning*, Case No. 2:15-CV-8673-RGK-SP.

[5]The defendants argue that the plaintiffs have failed to meet their obligations under the federal and local rules to meet-and-confer. (Docket #41 at 6-7). Aside from the parties' dispute about national transactional and sales data, the Court is satisfied, based upon its review of the documents submitted in connection with the pending motion, that the parties were both on fair notice—and had sufficiently conferred—regarding the discovery disputes underlying this motion prior to its filing. (Docket #43, Ex. 5 at 3; Exs. 7-9). Accordingly, the Court finds no error in the meet and confer process in which the parties engaged and will withhold from the adjudication the motion on this basis.

by which they misrepresent the existence, nature, and amount of price discounts applied to "original" or "regular" item prices. (Docket #14 ¶¶ 1-9, 25-29). By fabricating or inflating their "original" prices, the plaintiff claim the defendants' "sales" or "discounts" are false and deceive consumers into believing that they get a better deal than what they actually are. (Docket #14 ¶¶ 1-9, 25-29). The plaintiffs also claim that the defendants also falsely convey to consumers the impression that their prices are significantly lower than those regularly charged for those products by the defendants or other retailers. (Docket #14 ¶ 27). As a result of this purportedly deceptive marketing scheme, the plaintiffs claim to have purchased merchandise, or paid more for merchandise, than they would have absent deceptive discount price comparisons. (Docket #14 ¶ 26).

The plaintiffs' amended complaint alleges that they seek to represent two putative Classes of consumers consisting of: (1) "[a]ll individuals who purchased one or more items from the defendants advertised at a discount of 30% or more from a stated original 'item price' any time during the relevant statute of limitations period…"; and (2) "[a]ll individuals who purchased one or more items from Defendants within the State of Wisconsin advertised at a discount of 30% or more from a stated original 'item price' any time during the relevant statute of limitations period.…" (Docket #14 ¶¶ 77-89). The plaintiffs bring claims for unjust enrichment and violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18, *et seq.* ("WDTPA"), violations of the consumer fraud laws of various states, and the Declaratory Judgment Act, 28 U.S.C. §2201(a). (Docket #14 ¶¶ 90-129). Though the defendants moved to dismiss the plaintiffs' amended complaint on both substantive and jurisdictional grounds (Docket #17), the Court

Page 3 of 19

Case 2:16-cv-00196-JPS   Filed 09/08/16   Page 3 of 19   Document 58

denied that motion on June 24, 2016. (Docket #36). Now ripe for adjudication is the plaintiffs' motion to compel, filed on July 13, 2016. (Docket #38).

2.  LEGAL STANDARD

In accordance with Federal Rule of Civil Procedure 26,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). For the purpose of discovery, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (internal citations omitted). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Although the burden of demonstrating relevance is on the party seeking discovery, once relevance has been shown, it is the objecting party's obligation "to show why a particular discovery request is improper." *Sandoval v. Bridge Terminal Trans., Inc.*, No. 14-CV-639, 2015 WL 3650644, at *1 (E.D. Wis. June 10, 2015).

The Court has broad discretion to grant or deny motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998) ("[D]istrict courts have broad discretion in matters related to discovery."). Moreover, courts must limit discovery if the discovery sought is

unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2)(C)(i)-(iii). Indeed, courts must keep in mind that it is also their duty to "prevent 'fishing expeditions' or an undirected rummaging…for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009). Therefore, in ruling on a motion to compel, "a district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

3. DISCOVERY DISPUTES

Before the Court are four discovery disputes. (*See generally* Docket #39). As highlighted above, the plaintiffs argue that the Court should compel: (1) the production of various documents related to the processes by which the defendants establish their pricing policies; (2) the production of documents that contain the defendants' national transactional and sales data; (3) the testimony of a Rule 30(b)(6) witness(es) regarding the defendants' data and IT systems; and (4) the production of documents involved in related legal proceedings involving the defendants in California. The Court will address each of these issues in turn.

3.1 Pricing Policy Documents

The plaintiffs seek to compel documents concerning the processes by which the defendants establish their "regular," "original," and "sale" prices. (Docket #39 at 13-16; Docket #40, Ex. 1 at 8). To that end, the plaintiffs have requested documents in the form of:

7. Marketing studies, research, consultant reports, sales, and other data [the defendants] used to support [their] claim that the Merchandise was sold at a bona fide dollar or percentage Discount from a bona fide "regular" or "original" item price.

8. Documents sufficient to show any analysis or focus group studies concerning the pricing, labeling, marketing, and advertising of the Merchandise.

9. Documents that [the defendants] relied on, including any study, report, evaluation, assessment, analysis, and/or similar document, concerning consumer behavior or psychology or decision making, relating to purchasing items priced at an actual or purported Discount, including [the defendants'] Merchandise priced or sold at a Discount.

(Docket #40, Ex. 1 at 8).

Though the defendants attempt to parse these questions into oblivion by arguing that the questions are vague, confusing, and unclear (Docket #40, Ex. 3 at 6-8), the Court finds the aforementioned requests relevant, clear, and appropriate.[6] In other words, Kohls' objections tend toward obfuscation

---

[6]Though, the Court does acknowledge that the term "Merchandise" as employed in request no. 9 is duplicative of the definition provided by plaintiffs in their initial request. (Docket #40, Ex. 1 at 4) (defining "Merchandise" as "items priced, advertised, marketed, offered for sale, or sold by [the defendants] at a stated Discount.").

rather than genuine argumentation.[7] *See Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) ("[An] objecting party must show with specificity that the request is improper. That burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.") (internal citations omitted) (internal quotation marks omitted). Regardless, in the context of their brief filed in response to this motion, the defendants have represented to the Court that they have produced numerous documents, indeed all of the documents in their possession, that are responsive to these three requests. (Docket #41 at 15-16) ("Put simply, Defendants do not have any other documents to produce.").

The real issue embodied in this portion of the plaintiffs' motion to compel is the *scope* of the defendants' duty to respond to requests nos. 7-9. On the one hand, the defendants claim that they have produced all

---

[7]For example, the defendants object to the use of the word "claim" in the context of request no. 7. (Docket #40, Ex. 3 at 7-8). "Claim" is a transitive verb with few, specific meanings, including "to assert in the face of possible contradiction." *See Claim Definition*, MIRIAM-WEBSTER LEARNER'S DICTIONARY, http://www.merriam-webster.com/dictionary/claim (last visited Aug. 25, 2016). Though the word "claim" certainly is a word with legal import, the Court finds the defendants all-too-common strategy of obfuscating common language in the face of a straightforward question to be unpersuasive. *Cf. U.S. Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61 F. Supp. 3d 1, 8 (D.D.C. 2014) ("Finally, the Court feels that defendants' claims not to understand what 'sufficient' means in the context of the request are deliberate obfuscation."). This is particularly so given the defendants' clear assertion, in their answer, that they deny any wrongdoing with respect to the establishment and advertisement of "original" or "regular" prices. (Docket #37 at 12) ("Defendants deny any implicit allegation in Paragraph 51 that Kohl's "regular" or "original" prices were deceptive and/or misleading.").

of the documents in their possession that are responsive to request nos. 7-9 "for *each of the products alleged in the First Amendment Complaint at the Kohl's store at which Plaintiffs alleged they purchased* the product going back as far as the product has been available at those respective store[s]...." (Docket #41 at 15) (emphasis added). On the other hand, the plaintiffs argue that the defendants should *not* limit their responses to only those "products alleged" in the amended complaint, but rather should respond to the requests with respect to *all* of Kohls' merchandise. (Docket #39 at 12-16).

At bottom, therefore, there appears to be an unreconciled dispute over the nature of the pricing scheme at Kohls. For their part, the plaintiffs claim that certain discovery responses already made by Kohls (but not provided to the Court) reveal that "there exists a *single* nationwide pricing policy governing the application of 'original' and 'regular' retail prices." (Docket #39 at 14) (citing a document labeled "KLS-LE00001-51," which was not provided as an attachment to their declaration). Thus, according to the plaintiffs' theory, to the extent there is a single, nationwide pricing policy—which extends across all of the defendants' products, not just those listed in the amended complaint—the defendants should not be allowed to limit their responses to those products alleged in the amended complaint. In response, the defendants argue (also without citation to the record) that they have explained to the plaintiffs' counsel on numerous occasions that all pricing decisions by the defendants are made "at the item level by each individual buyer" and that these decisions vary from item to item and office to office due to market differences. (Docket #41 at 17).

Page 8 of 19

Case 2:16-cv-00196-JPS   Filed 09/08/16   Page 8 of 19   Document 58

Thus, there appears to be two opposing theories being advanced by the parties. On the one hand, if the plaintiffs are correct that the defendants operate a single, nationwide pricing policy governing the application of "original" and "regular" retail prices, the defendants are indeed compelled under the federal discovery rules to produce such documents insofar as they are responsive to requests nos. 7-9. *See* Fed. R. Civ. P. 26(b)(1). However, assuming the defendants have a legitimate basis in fact to deny the plaintiffs' assertion that pricing policies are nationwide—and are instead made on a product-specific basis—the Court will not compel the defendants to produce any more documents than they have purportedly already tendered to the plaintiffs. This is because the Court agrees with the defendants that compelling the production of all documents responsive to requests nos. 7-9 with respect to *all* of Kohls' products "priced, advertised, marketed, offered for sale, or sold by Defendants at a Discount" would impose an undue and disproportionate burden at this juncture of the litigation.

In any case, on the current state of the record, the Court concludes that the most prudent exercise of discretion is to deny the plaintiffs' motion to compel additional documents responsive to requests nos. 7-9. The plaintiffs' briefs, and attachments thereto, provide the Court with no support to refute the defendants' assertion that it maintains a product-centric marketing policy. (Docket #45 at 14) ("Clearly, Kohls possesses internal documents and related emails concerning its understanding of how its deceptive pricing scheme effects consumers' decision-making….) (without citation). As officers of the Court, the defendants have represented that they have produced all documents responsive to requests nos. 7-9 insofar as they implement any national pricing policies/training materials, etc. (Docket #41 at 15). If further

Page 9 of 19

Case 2:16-cv-00196-JPS    Filed 09/08/16    Page 9 of 19    Document 58

factual development leads the parties to discover any contrary set of facts from that which have been presented to the Court herein, the parties may alert the Court of those developments in writing as they deem necessary.[8]

### 3.2 Transactional Sales Documents

Next, the plaintiffs ask the Court to compel transactional and sales data from merchandise sold by the defendants across the country. (Docket #39 at 16-20). However, the defendants argue that the plaintiffs have failed to satisfy their meet and confer obligations under Federal Rule of Civil Procedure 37 for this request. (Docket #41 at 6-7). Based on the admissions of the parties in the context of their briefs, the Court agrees with the defendants that the Court's intervention regarding requests nos. 12-20 is premature and will defer the resolution of the issue at this time.

Rule 37 provides that "[o]n notice to other parties…a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). This meet and confer requirement "serves to facilitate communication between the parties while also reducing the potential costs of prematurely bringing a dispute

---

[8]The Court does not find the plaintiffs' citation to the defendants' Rule 26(a) obligations to affect this result. The defendants' disclosure specifically states that they intend to rely on "documents reflecting the regular, original, and sale prices of the merchandise *at issue in this case.*" (Docket #24, Ex. 2 at 4). The merchandise "at issue in this case" undisputedly includes the merchandise purchased by the plaintiffs, for which discovery has already been produced. Moreover, in light of the representations made by the defendants, the arguments/support provided by the plaintiffs, and the potential burden to be placed on the defendants, the Court concludes that compelling the production of documents responsive to requests nos. 7-9 with respect to each item sold by the defendants is inappropriate at this time.

before the Court." *Milwaukee Elec. Tool Corp. v. Chervon N. Am., Inc.*, Case No. 14-CV-1289-JPS, 2015 WL 4393896, at *2 (E.D. Wis. July 16, 2015). Courts have broad discretion in determining whether the moving party has satisfied the meet and confer component of Rule 37(a)(1), *Mintel Intern. Group, Ltd. v. Neerghen*, 2008 WL 4936745, *1 (N.D. Ill.2008), and, in making this determination, courts consider the totality of the circumstances underlying the motion, *Cunningham*, 255 F.R.D. at 478 (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)).

Here, the Court concludes that the plaintiffs have failed to satisfy their obligation under Rule 37 with respect to requests nos. 12-20. According to the plaintiffs themselves, as recently as July 6, 2016, they had provided the defendants with a proposal to "prioritize and receive Class Period sales data for all Wisconsin residents relating to the items of merchandise purchased by Plaintiffs." (Docket #39 at 12). Further, the plaintiffs propose that if class certification is granted, they would receive from the defendants the remainder of the nationwide sales data for all products for the certified Class. (Docket #39 at 12). Under this scenario, the plaintiffs maintain that they would be able to sufficiently present their damages methodology at trial with a completed sales data set. (Docket #39 at 12). However, "[a]s of the date of this motion, the plaintiffs had not received a response from the defendants to their latest proposal." (Docket #39 at 12).

In their opposition brief, the defendants do not address the plaintiffs' July 6, 2016 proposal. (Docket #41 at 18-25). Instead, they put forth numerous arguments in response as to why they should not be compelled to produce documents responsive to requests nos. 12-20. (Docket #41 at 18-25). Specifically, the defendants argue that the requests made by the plaintiffs are

over broad, irrelevant, disproportionate, unnecessary, and unduly burdensome.[9] (Docket #41 at 18-25). However, in a footnote, the defendants offer to "compromise" with the plaintiffs by providing "the nationwide sales data for the products that it has provided the Wisconsin sales data.…[t]hat is, those items that Plaintiffs actually identified in the First Amended Complaint." (Docket #41 at 25 n.4).

In sum, therefore, there appears to be fertile ground for "compromise" among the parties to resolve this dispute without Court intervention. Indeed, the plaintiffs appear to have filed this motion without receiving any response from the defendants regarding their July 6, 2016 proposal. Accordingly, the plaintiffs' motion to compel with respect to requests nos. 12-20 will be denied. If the parties, following their discussions pursuant to this Court's order, cannot resolve their dispute over the scope of discovery regarding transactional and sales data, they may return to the Court upon certification that they have satisfied their federal and local civil discovery obligations to meet and confer..

3.3    Rule 30(b)(6) Deposition Testimony

Third, the plaintiffs asks the Court to compel the defendants to produce a corporate witness pursuant Federal Rule of Civil Procedure 30(b)(6) to testify regarding certain IT systems and fields. (Docket #39 at 4). This request corresponds to Topics Nos. 1-3 of the Rule 30(b)(6) Notice

---

[9]The defendants submit that, in order to gather data on billions of nationwide transactions, they would need multiple weeks, if not months, of two full-time staff members running customized report programs. (Docket #41 at 22-23). The amount of data gathered from this scale of reporting may exceed a terabyte of information, requiring over 220 DVDs of storage. (Docket #41 at 23).

Page 12 of 19

Case 2:16-cv-00196-JPS   Filed 09/08/16   Page 12 of 19   Document 58

served upon the defendants on May 23, 2016. (Docket #40 Ex. 2). Those topics request testimony regarding:

> 1. Data captured or collected at the point-of-sale from purchasers of Merchandise, including Data collected from customers who: (a) participate in Kohls' customer loyalty programs; (b) participate in the Yes2You customer loyalty program; (c) participate at any other loyalty program; (d) use a Kohls credit card when making purchases; and (e) do not participate in any of Kohls' customer loyalty programs or use a Kohls credit card;
>
> 2. Data captured by Kohls at the point-of-sale of Merchandise, including: (a) product description; (b) SKU; (c) UPC number; (d) the price offered for sale, the price sold, and the "regular," "original," clearance, and sales prices of Merchandise; (e) whether a coupon was used; and (f) whether any additional Discount was applied to the Merchandise; and
>
> 3. Data and databases which track and record the prices for Merchandise, including: (a) the duration of time (dates) for which any sales, promotion, or Discount was in place for each item of Merchandise; (b) the product description; (c) SKU; (d) UPC number; (e) the price offered for sale, the price sold, and the "regular," "original," clearance, and sales prices; and (f) the method and length of time such Data is maintained by Kohls.

(Docket #40, Ex. 2 at 7-8).

During the meet and confer process, the plaintiffs further clarified for the defendants that they seek a witness to testify as to:

- The specific means by which merchandise pricing and sales data is captured (tracking of "regular," "original," and sales prices on a daily basis);

- The granularity of what is captured ([e.g.,] product description, SKU, UPC);

- How it is captured (what data points are captured relating to the "regular" price, sales price, and daily price offered for sale) from the point-of-sale to…the various databases that store this data…; and

- What is captured when a customer uses cash, a Kohl's charge, a non-Kohl's charge, and when a customer is a Yes2You customer.

(Docket #39 at 5-6; Docket #43, Ex. 10 at 2). In addition, the plaintiffs explained that they would like to understand, from an IT perspective:

- How, and in what format, the data is stored and maintained by each system (SQL, Access, etc.); and

- The period of time such data is available (what is live, nearline, archived), and how reports can be created or generated by the relevant databases.

(Docket #39 at 6; Docket #43, Ex. 10 at 2).

The defendants have refused to produce a witness on the aforementioned topics. (Docket #41). They argue that compelling a Rule 30(b)(6) witness to testify on these subjects would be duplicative of certain depositions taken by the plaintiffs' counsel in March of 2016 during previous litigation before this Court. (Docket #41 at 8-9) (referencing *Le v. Kohl's Corp.*, Case No. 2:15-CV-1171-JPS (E.D. Wis. filed Sep. 30, 2015)). Moreover, the defendants argue that: (1) the plaintiffs specifically agreed "not to seek a corporate designee from Defendants as to the topics these witnesses previously testified to;" and (2) in any case, the defendants are willing to stipulate that, for ascertainability purposes, they are generally able to identify customers that purchased products from their stores using a Kohl's charge

card or other credit card and received a discount of 30% or more over the past five years.[10] (Docket #41 at 8-12).

In response, the plaintiffs argue that compelling further corporate testimony on the topics listed above is appropriate and necessary because the defendants' previous witnesses, Ms. Vranak and Ms. Serra, did not provide adequate responses to the topics for which they were called upon to testify. (Docket #45 at 14-17). The plaintiffs filed deposition testimony with the Court tending to indicate that both the witnesses could not answer various questions regarding Kohls' pricing databases and the reports/data that they generate and store. (Docket #45 at 14-17; Docket #46, Exs. 9-10). Moreover, according to the plaintiffs, the defendants had not yet produced any documentation relevant to the content of those depositions until after they were taken. (Docket #45 at 16).

Based on the record before it, the Court will grant the plaintiffs' motion to compel deposition testimony responsive to topics nos. 1-3. Because the defendants' witnesses, Ms. Vranak and Ms. Serra, were not able to testify completely regarding the topics noticed, such testimony is appropriately sought by plaintiffs. *See* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization."). The Court also grants the plaintiffs' request on the basis that

---

[10]The defendants also argue that the plaintiffs' arguments in their opening brief on this subject are skeletal and should be denied on this basis alone. Indeed, the Court has the authority to deem arguments waived that have not been raised or inadequately supported. *See White Eagle Co-opinion Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir.2009). However, the Court concludes that the contents of the plaintiffs' opening brief and reply brief have sufficiently apprised the defendants and the Court of the underlying circumstances and arguments surrounding this discovery issue so as to justify the Court's resolution of the matter.

they now have in their possession the documents necessary to prepare for said depositions. *See, e.g., Trafton v. Rocketplane Kistler, Inc.*, No. 08-CV-99, 2009 WL 2251288, at *1 (E.D. Wis. July 22, 2009) (permitting additional discovery where "several documents ha[d] not been disclosed" and thereby hindering the plaintiffs' "ability to take meaningful depositions"). The plaintiffs' motion to compel in this respect will thus be granted.

3.4  Documents and Testimony from Related Civil Actions

Finally, the plaintiffs move the Court to compel the production of documents and testimony previously gathered and provided in *Chowning* and *Russell*, two actions pending against the defendants in the Central District of California. (Docket #39 at 15-17); *Russell*, No. 5:15-CV-1143-RGK-SP; *Chowning*, 2:15-CV-8673-RGK-SP. Though *Russell* and *Chowning* concern California residents, the plaintiffs here argue that such documents are relevant because they concern precisely the same allegations of wrongful conduct/harm as challenged herein. (Docket #39 at 16; Docket #45 at 14-15).

Though the defendants have expressly labeled this case a "copycat consumer class action" (Docket #13 at 1), they nonetheless argue that the documents produced in *Chowning* and *Russell* should not be compelled in this matter because they are irrelevant (Docket #41 at 25-28). More specifically, the defendants argue that the discovery involved in *Chowning* and *Russell* are irrelevant because those actions involve: (1) plaintiffs who lived in California; and (2) the application of California law. (Docket #41 at 25-28).

On the one hand, the Court agrees with the defendants that just because information is produced in a similar lawsuit does not mean that the same information is automatically discoverable in a separate law

suit. *See, e.g.*, *Oklahoma, ex rel. Edmondson v. Tyson Foods, Inc., Inc.*, No. 05-CV-329-TCK-SAJ, 2006 WL 2862216, at *2 (N.D. Okla. Oct. 4, 2006) (denying a motion to compel documents produced in a separate case based on "the nature of the claims, the time when the critical events in each case took place, and the precise involvement of the parties"). Nonetheless, under the broad scope of discovery authorized under the Federal Rules, the Court finds the documents and testimony produced in *Chowning* and *Russell* relevant to the action now before this Court. *See Alloc, Inc. v. Unilin Beheer B.V.*, No. 03-CV-1266, 2006 WL 757871, at *5 (E.D. Wis. Mar. 24, 2006) (granting the defendants' motion to compel documents produced in a parallel patent infringement case "to the extent that the documents and depositions relate to the products at issue in the present case"); *see also E.E.O.C. v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996) ("A request for discovery 'should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.'") (citing 8 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 2008 (1970)).

To be sure, the core allegations of fraud underlying the *Chowning* and *Russell* actions are precisely the same as that which are alleged here: that the defendants purportedly operate a nationwide price comparison scheme that fabricates "original" or "regular" item prices and deceives consumers into believing that they are getting a better deal for merchandise than what they actually are. *(See generally* Docket #14); *Russell*, No. 5:15-CV-1143-RGK-SP, Docket #14 ¶ 7; *Chowning*, 2:15-CV-8673-RGK-SP, Docket #44. And, these allegations of fraud do not appear to be dependent on the location of the plaintiff; rather, they are alleged to be "pervasive" and "nationwide." (*See*

Docket #14 ¶ 7) ("Kohl's deceptive discount price comparison advertising scheme is employed nationwide and is a long-running, pervasive, continuous, and ongoing effort to dupe customers into thinking they're getting a good deal."). To be sure, the legal bases of the claims underlying *Chowning, Russell*, and the instant matter differ in their source. *(See* Docket #14); *Russell*, No. 5:15-CV-1143-RGK-SP, Docket #14; *Chowning*, 2:15-CV-8673-RGK-SP, Docket #44. However, in general, the consumer fraud causes of action alleged, and underlying assertions of deceptive conduct needed to support these claims, are, in the Court's view, sufficiently similar so as to render the documents produced in *Chowning* and *Russell* relevant. *Compare* CAL. BUS. & PROFESS. CODE § 17200 (West) (prohibiting any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising) *with* CAL. CIV. CODE § 1770(a) (West) (prohibiting "unfair methods of competition and unfair or deceptive acts or practices") *and* WIS. STAT. § 100.18 (West) (prohibiting advertisements that are "untrue, deceptive, or misleading"). Accordingly, the plaintiffs' motion to compel discovery produced in *Chowning* and *Russell* will be granted.

4. CONCLUSION

In sum, the Court concludes that the plaintiffs' motion to compel will be granted in part and denied in part. (Docket #38). On the one hand, the motion will be granted insofar as the plaintiffs seek: (1) corporate testimony from a Rule 30(b)(6) witness regarding Topics Nos. 1-3 (referenced above); and (2) the production of documents and testimony from the *Chowning* and *Russell* cases. On the other hand, the motion will be denied insofar as the plaintiffs seek: (1) documents concerning the processes by which the defendants establish their "regular," "original," and "sale" prices, *i.e.*, those

documents that correspond to requests nos. 7-9 of the Plaintiffs' First Set of Requests for Production Documents; and (2) documents containing national transactional and sales data, *i.e.*, those documents that correspond to requests nos. 12-20 of the Plaintiffs' First Set of Requests for Production of Documents. Should the facts surrounding the production of such discovery change, the parties may notify the Court in writing as they find appropriate and necessary.

Accordingly,

IT IS ORDERED that the plaintiff's motion to compel (Docket #38) be and the same is hereby GRANTED in part insofar so it seeks: (1) corporate testimony from a Rule 30(b)(6) witness regarding Topics Nos. 1-3 (as outlined herein); and (2) the production of documents and testimony from the *Chowning* and *Russell* cases; and DENIED in part insofar as it seeks: (1) documents concerning the processes by which the defendants establish their "regular," "original," and "sale" prices, *i.e.*, those documents that correspond to requests nos. 7-9 of the Plaintiffs' First Set of Requests for Production Documents; and (2) documents containing national transactional and sales data, *i.e.*, those documents that correspond to requests nos. 12-20 of the Plaintiffs' First Set of Requests for Production Documents.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge