UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MIGUEL MURILLO,
MICHAEL BAEHMAN, and
BONNIE BAEHMAN

                   Plaintiffs,

v.

KOHL'S CORPORATION and
KOHL'S DEPARTMENT STORES, INC.,

                   Defendants.

Case No. 16-CV-196-JPS

ORDER

On September 1, 2016, pursuant to Federal Rule of Civil Procedure 26(c) and Civil Local Rule 7, the defendants filed a motion for a protective order that would preclude the deposition of Michelle Gass. (Docket #49). Ms. Gass is Kohl's Chief Merchandising and Customer Officer, with only Kohl's Chief Executive Officer, Kevin Mansell, holding a higher position within the company. (Docket #50 at 2). In response, the plaintiffs argue that the defendants have failed to satisfy their burden to establish "good cause" in support of such a protective order. (*See generally* Docket #72). The defendants' motion is now fully briefed and ripe for adjudication. (Docket #50, #72, #76). For the reasons stated herein, the Court concludes that a protective order is warranted and will, therefore, grant the motion.

1.    BACKGROUND

On February 18, 2016, the plaintiffs filed a complaint challenging the defendants' purportedly false and misleading marketing practices. (*See* Docket #1; *see also* Docket #14 (first amended complaint)). Specifically, the plaintiffs allege that the defendants have engaged in a pervasive, nationwide scheme by which they misrepresent the existence, nature, and amount of

price discounts applied to "original" or "regular" item prices. (Docket #14 ¶¶ 1-9, 25-29). By fabricating or inflating their "original" prices, the plaintiffs claim the defendants' "sales" or "discounts" create the false impression that consumers are getting a better deal than what they actually are. (Docket #14 ¶¶ 1-9, 25-29). The plaintiffs also claim that the defendants falsely convey to consumers the impression that their "original" prices are significantly lower than those regularly charged for those products by other retailers. (Docket #14 ¶ 27). As a result of these purportedly deceptive practices, the plaintiffs claim to have purchased merchandise, or paid more for merchandise, than they would have absent deceptive price comparisons. (Docket #14 ¶ 26).

According to the parties' briefs, the plaintiffs have deposed six witnesses during the discovery phase of this litigation. (Docket #50 at 1). These deponents include two 30(b)(6) witnesses, two senior buyers, a senior vice president, and a pricing compliance analyst, each of whom have testified how regular and sale prices are set at the defendants' stores. (Docket #50 at 1). In addition, the plaintiffs recently noticed the video-taped deposition of Kohl's Chief Merchandising and Customer Officer, Mr. Gass. (Docket #50 at 1).

On the one hand, the defendants argue that, pursuant to Federal Rule of Civil Procedure Rule 26, courts have repeatedly recognized that senior corporate executives—often called "apex" witnesses—are particularly vulnerable to harassing and disruptive discovery requests designed to place undue pressure on corporate defendants. (*See generally* Docket #50, #76). For this reason, the defendants encourage the Court to restrict the plaintiffs' ability to depose Ms. Gass because the plaintiffs have failed to establish that: (1) Ms. Gass has "unique or specialized knowledge" necessary to the

resolution of the case; and (2) the plaintiffs have exhausted alternative, less burdensome avenues for obtaining the information that is now being sought from her. (Docket #50 at 2-3). With regard to the latter point, the defendants argue that all of the witnesses that have been deposed in this case have consistently testified that the pricing decisions at the heart of this action are made by individual buyers based on competitive market factors and are *not* directed by upper level executives like Ms. Gass. (Docket #50 at 4). Thus, because: (1) the defendants have not mentioned or identified Ms. Gass in any pleadings, filings, or discovery responses; (2) her name does not appear in any document produced in this case; and (3) the defendants do not intend to call her as a witness at trial or offer her declaration in support of any key motions in this matter, the defendants argue that a protective order should issue. (Docket #50 at 5).

The plaintiffs, on the other hand, argue that Ms. Gass, by virtue of her role within the company, is knowledgeable regarding a number of issues relevant to this lawsuit. (Docket #76 at 2, 5-6, 8). Though the plaintiffs have not articulated these issues in a consistent manner, at bottom, it appears that they are arguing that Ms. Gass is generally knowledgeable about the defendants':

- labeling, advertising, and marketing practices; and
- policies with respect to pricing—namely, financial plans, margins, markups.

(Docket #72 at 2, 5-6). Moreover, the plaintiffs claim that none of the other deponents in this case, nor any of the discovery that they obtained, have shed sufficient light on these topics. (Docket #72 at 6).

The Court concludes that Ms. Gass's deposition would be unduly burdensome and disproportionate to the needs of this case given: (1) Ms. Gass's lack of personal knowledge with regard to the pricing decisions made by buyers; (2) the lack of evidence tending to suggest that Ms. Gass is responsible for, or involved in, directing a set of uniform policies that affect the defendants' pricing decisions; (3) the number of opportunities that the plaintiffs have had to depose the defendants' employees, all of whom have possessed relevant and responsive knowledge regarding the topics in question; and (4) other discovery that has already occurred in this case. Accordingly, the Court will grant the defendants' motion for a protective order. (Docket #49).

2. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…." Fed. R. Civ. P. 26(b)(1). "Although there is a strong public policy in favor of disclosure of relevant materials, Rule 26(b)(2) of the Federal Rules of Civil Procedure empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (quoting Fed. R. Civ. P. 26(b)(2)). Though district courts have "broad discretion" over discovery matters, they "should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Id.* (internal citations omitted).

The federal rules authorize the entry of an order protecting a party against discovery only when good cause is shown. Fed. R. Civ. P. 26(c). Under Rule 26(c), "good cause" exists when justice requires the protection of a "party or a person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of making this "good cause" showing. *See Milwaukee Elec. Tool Corp. v. Chevron N.A., Inc.*, No. 14-CV-1289-JPS, 2015 WL 4393896, at *5 (E.D. Wis. July 16, 2015). In this respect, however, conclusory statements of hardship are not sufficient. *See Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181 at *8 (N.D. Ill.1998).

Flowing from the discovery rules, and "[u]nder what has become known as the 'apex doctrine,' the Court may protect a high level corporate executive from the burdens of a deposition when any of the following circumstances exist: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company." *Naylor Farms, Inc. v. Anadarko OGC Co.*, Case No. 11–CV–01528–REB–KLM, 2011 WL 2535067, at *1 (D. Colo. Jun. 27, 2011). In this way, the "apex doctrine seeks to prevent a high-ranking corporate executive[s] from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts; in other words, to protect apex employees 'from annoyance, embarrassment, oppression, or undue burden or expense….'" *Dyson, Inc. v. Sharkninja Operating LLC*, Case No. 14-CV-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (citing Fed.

R. Civ. P. 26(c)(1)); *see also Celerity, Inc. v. Ultra Clean Housing, Inc.*, Case No. C05–04374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.") (collecting cases). Though the doctrine "is not an ironclad rule, [it] bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." 8A Charles Alan Wright, Arther R. Miller, and Richard L. Marcus, Federal Practice and Procedure, § 2036 n.7 (3d ed.).

3. ANALYSIS

In support of their claim that Ms. Gass's deposition is proper and appropriate, the plaintiffs claim that Ms. Gass—by virtue of her role within the defendants' corporate structure—possesses relevant knowledge regarding the defendants' overall labeling, advertising, and marketing policies. (Docket #72 at 2, 5-6, 13-16). As a basis for this assertion, the plaintiffs quote a description of Ms. Gass's "leadership" position from the defendants' website. (Docket #72 at 13). Second, the plaintiffs claim —without any citation to the record—that Ms. Gass is knowledgeable about specific pricing policies implemented by the defendants, namely those related to margins, financial plans, and markups. (Docket #72 at 7, 11).

Nonetheless, the Court concludes that the defendants have satisfied their burden to demonstrate "good cause" for the protective order because Ms. Gass does not appear to possess any particularized knowledge beyond that which other witnesses have testified regarding the labeling, advertising, and marketing policies at issue in this case. Ultimately, the plaintiffs claims

Page 6 of 10

Case 2:16-cv-00196-JPS   Filed 10/18/16   Page 6 of 10   Document 79

turn on the defendants' propensity to engage in false price comparisons. *(See generally* Docket #14). And, despite Ms. Gass's overall role in overseeing "merchandising," "planning and allocation," "product development," and "customer engagement strategy," the plaintiffs present no basis from which the Court can conclude that Ms. Gass has any "specialized" or "unique" knowledge about the manner in which the defendants price their merchandise. *See Burns v. Bank of Am.*, Case No. 03-Civ.-1685-RMB-JCF, 2007 WL 1589437, *3 (S.D.N.Y. June 4, 2007) ("Unless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a[ ] deposition of a highly-placed executive while allowing other witnesses with the same knowledge to be questioned.") (internal quotations omitted).

Here, Ms. Gass has sworn under oath that "in my position…I am not responsible for setting retail or promotional prices for the merchandise that is sold at Kohl's department stores." (Docket #52 ¶ 3). Nor "did [she] set the retail or promotional prices for the merchandise identified in the First Amended Complaint.…" (Docket #52 ¶ 4). Rather, "*[b]uyers* set both the ticket and promotional prices on Kohl's merchandise." (Docket #52 ¶ 5) (emphasis added). Indeed, each of the deposed witnesses in this case have reiterated this same fact: that pricing decisions with respect to the defendants' merchandise are set on a product-by-product basis by the buying offices and are ultimately the responsibility of the individual buyer. (Docket #50 at 8). For their part, the plaintiffs have failed to supply this Court with any evidence tending to refute the deponents' testimony that decisions about pricing are made by buyers in their respective categories, instead of in compliance with a uniform policy that is dictated by upper management such

as Ms. Gass. (Docket #50 at 2; Docket #72). Though the plaintiffs allege that such policies exist in their amended complaint, subjecting an upper-level executive to a deposition—particularly one who swears under oath to have no knowledge of the underlying facts of the price comparisons at issue in this case—upon the basis of a mere allegation that such policies exist is inappropriate under the circumstances. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–52 (1978) ("Discovery, like all matters of procedure, has ultimate and necessary boundaries.") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

The Court's conclusion is further bolstered against the backdrop that less burdensome channels of discovery have been available to the plaintiffs to gather information on the topics at issue. With respect to marketing statements and the defendants' overall labeling, advertising, and marketing practices, the plaintiffs have had the opportunity to depose two 30(b)(6) witnesses, two senior buyers, a senior vice president, and a pricing compliance analyst from the defendants on this very subject. (*See* Docket #50 at 1; Docket #76 at 9) (stating that the Rule 30(b)(6) witnesses must testify as to "policies, practices, and procedures regarding…pricing of the Merchandise at a Discount, including, but not limited to, the process by which You determined that a given item of Merchandise would be priced at a specific dollar or percentage discount from the 'regular' or 'original' item price."). Moreover, as the plaintiffs admit, they have served numerous requests for the production of documents related to marketing studies, research reports, and consultant analyses in an effort to learn about the defendants' overall labeling, advertising, and marketing practices. (Docket #72 at 9). In fact, these very documents were the subject of the plaintiffs' earlier motion to compel

in which the Court concluded that the defendants had complied with their obligation to turn over all responsive documents. (Docket #58 at 9) ("[A]ssuming the defendants have a legitimate basis in fact to deny the plaintiffs' assertion that pricing policies are nationwide—and are instead made on a product-specific basis—the Court will not compel the defendants to produce any more documents than they have purportedly already tendered to the plaintiffs.").

With respect to the defendants' policies regarding financial plans, margins requirements, and markups, this Court likewise finds that the plaintiffs had ample opportunity to (and, in fact, did) question at least half of defendants' witnesses on these issues. (*See* Docket #72 at 19-22; Docket #76 at 8, 14-15). Beyond the plaintiffs' failure to explain these terms and outline why they are relevant, the plaintiffs provide no justification as to why any of the witnesses' testimony on these points was deficient. (*See* Docket #72 at 18) (asserting—without citation to any of the deponents' testimony—that "margin and markup requirements" are "key factors" that "buyers look to in determining the original and regular price"). Rather, it appears that the plaintiffs either: (1) never asked about these topics; or (2) are not satisfied with the answers they received. Under the circumstances, the Court concludes that neither of these reasons are a sufficient basis to hale Ms. Gass into a deposition over a topic for which the plaintiffs have failed to demonstrate Ms. Gass's personal knowledge.

4. CONCLUSION

In sum, an apex deposition is generally inappropriate when an upper level executive lacks personal knowledge regarding the litigation, or when the requested information can be garnered from more knowledgeable

subordinates. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1989). Such is the situation with respect to Ms. Gass. Her name is not mentioned once in any discovery response or document produced by the defendants in this case, and she has no personal involvement in the pricing of products. What is more, the plaintiffs have had ample opportunity to discuss these topics with lower-level employees with direct, personal involvement and knowledge about these issues. Thus, the Court concludes Ms. Gass's deposition would be unduly burdensome, disruptive, and disproportionate to the needs of the litigation, and that a protective order should, therefore, issue preventing her deposition.

Accordingly,

IT IS ORDERED that the defendants' motion for a protective order (Docket #49) be and the same is hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge