**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MIGUEL MURILLO, MICHAEL BAEHMAN, and BONNIE BAEHMAN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>KOHL'S CORPORATION and KOHL'S DEPARTMENT STORES, INC.,<br><br>Defendants. | Case No. 2:16-cv-00196-JPS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................... 1

II.      COMMON FACTS UNDERLYING PLAINTIFFS' CLAIMS ......................................... 3

     A.      Through Application of a Uniform Set of Pricing Rules, Kohls Utilizes Price Comparison Advertising to Induce Consumers to Purchase Kohls' Merchandise ............................................................................... 3

     B.      Kohls' Pricing Guide and Sales Data Objectively Confirm that Kohls' Reference Prices Are Fictitious and Cause Class Members to Overpay for Kohls' Merchandise ............................................................................... 5

     C.      Plaintiffs Were Victims of Kohls' Deceptive Price Comparison Advertising Scheme and Are Typical of Reasonable Consumers ............................ 6

     D.      Plaintiffs' Expert Can Use Kohls' Sales Data to Mechanistically Calculate Classwide Damages and Restitution ............................................. 8

III.      THE PROPOSED CLASSES ............................................................... 9

IV.      ARGUMENT ............................................................................... 9

     A.      The Requirements of Rule 23(a) Are Satisfied ..................................... 10

         1.      The Numerosity Requirement of Rule 23(a)(1) and the Ascertainability Requirement Are Satisfied ............................... 10

         2.      The Commonality Requirement of Rule 23(a)(2) Is Satisfied ......................... 12

         3.      The Typicality Requirement of Rule 23(a)(3) Is Satisfied ............................ 13

         4.      The Adequacy Requirements of Rules 23(a)(4) and 23(g)(1) Are Satisfied ............................................................................... 15

     B.      The Requirements of Rule 23(b)(2) Are Satisfied ................................... 15

     C.      The Requirements of Rule 23(b)(3) Are Satisfied ................................... 17

         1.      Common Questions of Fact and Law Predominate ......................... 18

             a.      Common Questions of Law Predominate ............................. 18

                 i.      Wisconsin's Choice of Law Rules Compel Application of the WDTPA Nationwide ............................................. 18

                 ii.      There Are No Material Conflicts Among the Laws of the UJE States ............................................................. 23

b.    Common Questions of Fact Predominate as to Plaintiffs' WDTPA and Unjust Enrichment Claims ................................................. 24

     i.    Plaintiffs Will Prove Their WDTPA Claim with Common Evidence ........................................................................................ 24

     ii.    Plaintiffs' Will Prove Their Claim for Unjust Enrichment with Common Evidence ................................................................. 26

c.    Common Questions Predominate as to Plaintiffs' Measure of Damages and Restitution ........................................................ 27

     i.    Plaintiffs Will Use Common Evidence to Measure Classwide Damages Under the WDTPA ........................................ 27

     ii.    Plaintiffs Will Use Common Evidence to Calculate Classwide Restitution for Unjust Enrichment ................................ 29

2.    A Class Action Is Superior to Individual Actions ........................................... 30

V.    CONCLUSION ............................................................................................. 30

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
    No. C 04-1511 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ...................................... 24

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
    168 F.3d 967 (7th Cir. 1999) ................................................................................................ 25

*Beloit Liquidating Tr. v. Grade*,
    270 Wis. 2d 356 (2004) ........................................................................................................ 21

*Boulet v. Nat'l Presto Indus., Inc.*,
    No. 11-cv-840, 2013 WL 4014982 (W.D. Wis. Aug. 6, 2013) ............................................ 18

*Bristol Vill., Inc. v. La.-Pac. Corp.*,
    916 F. Supp. 2d 357 (W.D.N.Y. 2013) ............................................................................... 17

*Bryant v. Wyeth*,
    879 F. Supp. 2d 1214 (W.D. Wash. 2012) .......................................................................... 20

*Buckett v. Jante*,
    316 Wis. 2d 804 (2009) ........................................................................................................ 23

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ............................................................... 17, 27, 29, 30

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................................... 23

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................................... 30

*In re Checking Account Overdraft Litig.*,
    281 F.R.D. 667 (S.D. Fla. 2012) ................................................................................ 23, 24, 27

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*,
    797 F.3d 426 (7th Cir. 2015) ........................................................................................ 12, 13

*Clorox Co. v. S.C. Johnson & Son, Inc.*,
    627 F. Supp. 2d 954 (E.D. Wis. 2009) ................................................................................ 22

*Cohen v. Chilcott*,
    522 F. Supp. 2d 105 (D.D.C. 2007) ..................................................................................... 23

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................................... 27, 28

iii

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ...........................................................................13

*Demitropoulos v. Bank One Milwaukee, N.A.*,
    915 F. Supp. 1399 (E.D. Ill. 1996)...................................................................18

*Drinkwater v. Am. Family Mut. Ins. Co.*,
    290 Wis. 2d 642 (2006) ...........................................................................19, 21

*Fabricant v. Sears Roebuck*,
    202 F.R.D. 310 (S.D. Fla. 2001) ......................................................................17

*Gooch v. Life Inv's Ins. Co. of Am.*,
    672 F.3d 402 (6th Cir. 2012) ...........................................................................17

*Hoving v. Lawyers Title Ins. Co.*,
    256 F.R.D. 555 (E.D. Mich. 2009) ..................................................................27

*Huyer v. Wells Fargo & Co.*,
    295 F.R.D. 332 (S.D. Iowa 2013) ...................................................................17

*Jefferson v. Ingersoll Int'l Inc.*,
    195 F.3d 894 (7th Cir. 1999) .....................................................................16, 17

*Jermyn v. Best Buy Stores, L.P.*,
    276 F.R.D. 167 (S.D.N.Y. 2011) ....................................................................17

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
    301 Wis. 2d 109 (2007) ...................................................................................24

*Le v. Kohls Dep't Stores, Inc.*,
    160 F. Supp. 3d 1096 (E.D. Wis. 2016)........................................................1, 18

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*,
    216 F.3d 577 (7th Cir. 2000) ...........................................................................17

*Love v. Blue Cross & Blue Shield of Ga., Inc.*,
    439 F. Supp. 2d 891 (E.D. Wis. 2006)........................................................19, 22

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009).............................................................................24

*Mgmt. Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*,
    206 Wis. 2d 158 (1996) ...................................................................................29

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
    244 F.R.D. 531 (D. Minn. 2007)......................................................................20

iv

*Mueller v. Harry Kaufmann Motorcars, Inc.*,
  359 Wis. 2d 597 (Ct. App. 2014) ........................................27

*Mullins v. Direct Dig., LLC*,
  795 F.3d 654 (7th Cir. 2015) ........................................11

*Muzuco v. Re$ubmitIt, LLC*,
  297 F.R.D. 504 (S.D. Fla. 2013) ........................................27

*Novell v. Migliaccio*,
  309 Wis. 2d 132 (2008) ........................................24

*Pro-Pac, Inc. v. WOW Logistics Co.*,
  721 F.3d 781 (7th Cir. 2013) ........................................29

*Rodman v. Safeway, Inc.*,
  No. 11-cv-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014) ....................................14

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ........................................13

*Schlueter v. Latek*,
  683 F.3d 350 (7th Cir. 2012) ........................................29

*Schumacher v. Tyson Fresh Meats, Inc.*,
  221 F.R.D. 605 (D.S.D. 2004) ........................................27

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ........................................10

*Simon v. Philip Morris Inc.*,
  124 F. Supp. 2d 46 (E.D.N.Y. 2000) ........................................23

*Singer v. AT & T Corp.*,
  185 F.R.D. 681 (S.D. Fla. 1998) ........................................24

*Spann v. J.C. Penney Corp.*,
  307 F.R.D. 508 (C.D. Cal. 2015),
  *modified*, 314 F.R.D. 312 (C.D. Cal. 2016) ........................................ *passim*

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) ........................................13

*State Farm Mut. Auto. Ins. Co. v. Gillette*,
  251 Wis. 2d 561 (2002) ........................................20

*State v. Going Places Travel Corp.*,
  362 Wis. 2d 414 (Ct. App. 2015) ........................................28

Case 2:16-cv-00196-JPS   Filed 11/08/16   Page 6 of 40   Document 91

*Stawski v. Secured Funding Corp.*,
   No. 06-CV-0918, 2008 WL 647024 (E.D. Wis. Mar. 6, 2008) ..............................................10

*Suchanek v. Sturm Foods, Inc.*,
   311 F.R.D. 239 (S.D. Ill. 2015) ..........................................................14

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ....................................................12, 13

*Swanson v. Am. Consumer Indus., Inc.*,
   415 F.2d 1326 (7th Cir. 1969) ..........................................................10

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ........................................................14

*Temme v. Bemis Co., Inc.*,
   No. 08-CV-090, 2009 WL 1505120 (E.D. Wis. May 28, 2009) ............................14

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004) ........................................................23

*Tietsworth v. Harley-Davidson, Inc.*,
   261 Wis. 2d 755 (Ct. App. 2003),
   *rev'd on other grounds*, 270 Wis. 2d 146 (2004) ..................................28

*Tim Torres Enters., Inc. v. Linscott*,
   142 Wis. 2d 56 (Ct. App. 1987) ....................................................22, 28

*Triad Grp., Inc. v. Vi-Jon, Inc.*,
   870 F. Supp. 2d 645 (E.D. Wis. 2012) ..................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ....................................................................17

*W.H. Fuller Co. v. Seater*,
   226 Wis. 2d 381 (Ct. App. 1999) ........................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ....................................................12, 13, 16, 17

*West v. Timberlake*,
   No. 08-CV-670, 2009 WL 959655 (E.D. Wis. Apr. 8, 2009) ................................13

*Westways World Travel, Inc. v. AMR Corp.*,
   218 F.R.D. 223 (C.D. Cal. 2003) ........................................................24

*Wood v. Capital One Auto Fin., Inc.*,
   No. 06-CV-7, 2006 WL 6627680 (E.D. Wis. Sept. 19, 2006) ..........................13, 15

Case 2:16-cv-00196-JPS   Filed 11/08/16   Page 7 of 40   Document 91

**STATUTES, RULES, AND REGULATIONS**

16 C.F.R.
 §233.1...................................................................................................................16
 §233.1(a)...............................................................................................................25

FEDERAL RULES OF CIVIL PROCEDURE,
 Rule 23(a)............................................................................................... *passim*
 Rule 23(a)(4)........................................................................................................15
 Rule 23(b)(2)........................................................................................... *passim*
 Rule 23(b)(3)........................................................................................... *passim*
 Rule 23(g)............................................................................................................15
 Rule 23(g)(1)....................................................................................................3, 15
 Rule 23(g)(4)........................................................................................................15

WIS. ADM. CODE
 §ATCP 124.01......................................................................................................25
 §ATCP 124.04.................................................................................................16, 25
 §ATCP 124.05.........................................................................................8, 16, 25, 28

WISCONSIN DECEPTIVE TRADE PRACTICES ACT,
 §100.18.................................................................................................................2
 §100.18(1).......................................................................................................18, 25
 §100.18(11)(b)(2).................................................................................................18

**OTHER AUTHORITIES**

WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS (5th ed. 2013)
 §12:4...................................................................................................................27
 §4:38...................................................................................................................17

Case 2:16-cv-00196-JPS   Filed 11/08/16   Page 8 of 40   Document 91

Plaintiffs Miguel Murillo, Michael Baehman, and Bonnie Baehman ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for class certification pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION

Plaintiffs and class members are consumers who were deceived by the ephemeral promise of a "good deal" that Defendants Kohl's Corporation and Kohl's Department Stores, Inc. ("Kohls" or the "Company")[1] routinely advertises.    Plaintiffs' common evidence demonstrates that Kohls engages in a systematic, uniform, and Company-wide false price-comparison scheme to induce sales of Kohls' products, which impacts all consumers in the proposed classes (defined below) exactly alike.    Kohls' promotional price comparison advertisements purport to offer consumers a significant discount from the "original" or "regular" price.  *See generally* ECF No. 88, Report of Larry D. Compeau, Ph.D. ("Compeau Report"). Such advertising has an obvious purpose:   to increase consumers' desire to purchase merchandise, while decreasing their desire to search for a lower price elsewhere.  *Id.*  At Kohls, however, the advertised bargain is illusory.  *Id.*  For example, Plaintiffs identified a number of products that they purchased at a 30% or more discount from the advertised original price (the "Products").  ECF No. 14, First Amended Complaint ("FAC"), ¶¶56-58, 62-63, 67-68.  ██████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ Kohls fails to sell, or genuinely offer for

sale, the Products at the advertised original price.  *See generally* ECF No. 87, Expert Report of

---

[1]      In a related action, this Court adopted the convention of collectively referring to Defendants as "Kohls," without an apostrophe.  *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1098 n.1 (E.D. Wis. 2016).  Plaintiffs adopt this same convention.

Christian Tregillis, CPA, ABV, CFF, CLP ("Tregillis Report"). ████████████████



████████████████████████████████████████████████████████ *Id.*, ¶42. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

*Id.* ████████████████████████████████████████████████████████████

████████████████████████████████ *Id.* ████████████████████████████████████

████████████████████████████████████ *Id.*, ¶44.

Plaintiffs seek to represent three proposed classes of consumers, defined below, who were (and continue to be) deceived by Kohls' deceptive price-comparison advertising scheme. The central issue in this litigation is whether Kohls engages in false advertising that violates the Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. §100.18, and unjustly enriches Kohls at class members' expense. The answer to this question will be the same for all class members. Kohls' uniform practice of using fictitious original reference prices in its advertising is either false and misleading or it is not. A single set of facts will establish Kohls' liability in this case and its own sales records will show the damages Plaintiffs and class members have suffered and the amount of restitution to which they are entitled. Accordingly, Rule 23's predominance requirement is satisfied in this case and trying all class members' claims in a single proceeding is inherently manageable. Further, certification under Rule 23(b)(2) is also appropriate because Kohls' deceptive pricing scheme is ongoing and Kohls has thus "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Thus, this case easily meets the requirements for Rule 23 class certification. Finally, as set forth herein, Plaintiffs' claims are typical of those of absent class members and Plaintiffs

are adequate representatives of the classes, and Plaintiffs' counsel, Scott+Scott, Attorneys at Law, LLP ("Scott+Scott"), should be appointed Class Counsel under Rule 23(g)(1).

## II. COMMON FACTS UNDERLYING PLAINTIFFS' CLAIMS

### A. Through Application of a Uniform Set of Pricing Rules, Kohls Utilizes Price Comparison Advertising to Induce Consumers to Purchase Kohls' Merchandise

Kohls is a Wisconsin-based national department store that sells a consistent assortment of merchandise, such as apparel, footwear, and home products, nationwide. PMSJ Opp. Ex. A, Kohls 2016 Form 10-K at 1, 3 (ECF No. 83-1).[2] Kohls operates 1,164 stores in the United States and 40 stores in Wisconsin, where it is headquartered and where its key executives and personnel involved in promotional pricing are located. PMSJ Opp. Ex. A, Kohls 2016 Form 10-K at 1, 10; PMSJ Opp. Ex. B, Defs. Resp. to RFAs, Nos. 22 and 23 (ECF Nos. 83-2, 83-3); PMSJ Opp. Ex. O, Vranak Dep. at 21:21-22:6, 29:10-24, 143:15-22 (ECF No. 83-17). Like any public company, Kohls is focused on increasing its profit margins. PMSJ Opp. Ex. A at 16; PMSJ Opp. Ex. L, Serra Dep. at 68:3-7 (ECF No. 83-14); PMSJ Opp. Ex. N, Stenson Dep. at 87:23-88:2, 88:17-20 (ECF No. 83-16); PMSJ Opp. Ex. G, Futhey Dep. at 26:1-3 (ECF No. 83-9).

███████████████████████████████████████████████

███████████████████████████████████████████████ PMSJ Opp. Ex. G, Futhey Dep. at 38:17-22, 39:14-25, 139:20-140:4; *see, e.g.*, Tregillis Report at ¶12 (sample promotional e-signs); PMSJ Opp. Exs. M, JJ (same) (ECF Nos. 83-15 and 83-38, respectively); PMSJ Opp. Ex. AA (sample promotional circulars) (ECF No. 83-29). ████

---

[2] Plaintiffs cite to much of the same evidence that they submitted in support of Plaintiffs' Opposition to Kohls' Motion for Summary Judgment ("PMSJ Opp.") (ECF No. 81). Therefore, Plaintiffs use the naming convention "PMSJ Opp. Ex." to refer to those same exhibits now cited in support of class certification. For the ease of the Court and to minimize duplication, the PMSJ Opp. Exhibits are not being re-filed, but instead are incorporated by reference. All new exhibits in support of class certification are cited as "Ex." and are attached to the Declaration of Erin Green Comite filed concurrently with this brief.

3

[REDACTED] PMSJ Opp. Ex. Q, 2010 Guidelines (ECF No. 83-19); PMSJ Opp. Ex. S, 2013 Guidelines (ECF No. 83-21); *see also* PMSJ Opp. Exs. B, Defs. Resp. to RFAs, Nos. 22 and 23; PMSJ Opp. Ex. C, Defs. Resp. and Obj. to Pltfs. 1st Set of Interrogs., No. 5 (ECF No. 83-4); PMSJ Opp. Ex. O, Vranak Dep. at 22:14-20, 36:4-8, 145:15-19, 24:17-25:5, 72:4-5, 73:3-74:2; PMSJ Opp. Ex. L, Serra Dep. at 96:4-21. [REDACTED]

[REDACTED] PMSJ Opp. Ex. O, Vranak Dep. at 35:10-23.

[REDACTED]

[REDACTED] PMSJ Opp. Ex. S at KLS-MUR001696; PMSJ Opp. Ex. O, Vranak Dep. at 24:22-25:15, 27:1-6, 35:9-20, 42:24-43:9, 45:22-46:8; PMSJ Opp. Ex. L, Serra Dep. at 45:21-46:6, 46:17-25, 49:5-16, 96:6-21, 99:2-9.

Plaintiffs' expert Larry D. Compeau, Ph.D., opines that Kohls uses price comparisons that incorporate an advertised reference price (*i.e.*, the "regular" or "original" price) because it is extremely effective at inducing consumers to buy merchandise at its stores. *See generally* Compeau Report. [REDACTED]

[REDACTED]

[REDACTED] *Id*. at 9; *see also* Declaration of Claudiu V. Dimofte, Ph.D. ("Dimofte Decl."), ¶39; *id*., Ex. A, Marketing Research on Consumer Response to Potentially Deceptive Sale Pricing ("Dimofte Report") at 21 (concluding "profit motive induces the use of artificially inflated reference prices in advertised sales as a tool to manipulate consumer interest"). [REDACTED]

[REDACTED] PMSJ Opp. Ex. U, V (ECF No. 83-23, 83-24).

4

**B.     Kohls' Pricing Guide and Sales Data Objectively Confirm that Kohls' Reference Prices Are Fictitious and Cause Class Members to Overpay for Kohls' Merchandise**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Compeau Report at 6-9.  Dr. Compeau explains:

> In order for a Reference Price to be valid it should either reflect the actual price at which the item is regularly sold in the marketplace, or be a price at which the seller has actually sold either a majority of units, or a price at which the seller has offered the item for a majority of time.

*Id.* at 7. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ *Id.* at 6. ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ *Id.*; *see also id.* at 9. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████[3] *Id.*; *see also id.* at 7-8. ██████████████████████

████████████████████████████ *Id.* at 9.

Plaintiffs' expert Claudiu V. Dimofte, Ph.D., further confirms this conclusion.  He conducted a survey of consumers to determine if, in the absence of deceptively advertised reference prices, consumers would not have purchased or would have paid less for products. Dimofte Report at 5-10. ████████████████████████████████████

---

[3]     Unless otherwise indicated, all emphasis is added and internal citations are omitted.



████████████████████████████████████ Dimofte Report at 5; *id.* at 12. ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ Dimofte Report at 21.

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Tregillis Report, ¶42; *see also id.*, ¶¶34-41. ███████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████ *Id.*, ¶42. ██████████████████

████████████████████████████████ *Id.*, ¶¶42-43. ████████████

██████████████████████████████████████████████████

████████ *Id.*, ¶44.

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

## C. Plaintiffs Were Victims of Kohls' Deceptive Price Comparison Advertising Scheme and Are Typical of Reasonable Consumers

Each Plaintiff buys Kohls' merchandise because of Kohls' advertised discounts. *See, e.g.*, PMSJ Opp. Ex. E, B. Baehman Dep. (ECF No. 83-7); PMSJ Opp. Ex. J, M. Baehman Dep. (ECF No. 83-12); PMSJ Opp. Ex. K, M. Murillo Dep. (ECF No. 83-13); Murillo Decl., ¶¶4, 7, 9-

11 (ECF No. 84); B. Baehman Decl., ¶¶4, 5, 6, 7, 9-11 (ECF No. 85); M. Baehman Decl., ¶¶4, 5, 7, 9-11 (ECF No. 86). For example, Mrs. Baehman testified that Kohls' promotional pricing causes her to go to the store and purchase items: "I would have gone to the store specifically because of a -- seeing something ahead of time that indicated sales." PSMJ Opp. Ex. E, B. Baehman Dep. at 56:22-57:1. Likewise, Mr. Baehman testified similarly: Q: "So it's important to you that you saw there was a sale price, and that's why you and your wife buy things." A: "Yes." PSMJ Opp. Ex. J, M. Baehman Dep. at 17:19-22. When shopping at Kohls, each Plaintiff looks for products that are offered for sale at a discount off of the regular or original price and observes both the original price of an item that he or she wants to purchase and the various signs that describe Kohls' promotional offers, such as the 30%, 40%, 50%, and 60% discounts off of a purported regular or original price. *See*, *e.g.*, Murillo Decl., ¶4; M. Baehman Decl., ¶5; B. Baehman Decl., ¶5. Plaintiffs also relied on the truth of the advertised regular or original price in Kohls' advertising, which they believed was the normal, everyday price for an item when it was not on sale. Murillo Decl., ¶9; M. Baehman Decl., ¶6; B. Baehman Decl., ¶6. For example, Mr. Baehman, like other typical consumers, believed that Kohls' regular or original prices are those Kohls actually sold its products for: Q: "Do you know what a regular or original price at Kohl's is?" A: "Yes." That would be the price that they would originally have sold it for." PMSJ Opp. Ex. J, M. Baehman Dep. at 16:15-21.

Plaintiffs purchased numerous items from Kohls offered at a discount of more than 30%. *See*, *e.g.*, PMSJ Opp. Ex. D, Defs. Responses to 2nd Interrogs., No. 14 (ECF No. 83-5, 83-6); PMSJ Opp. Ex. T (ECF No. 83-22); PMSJ Opp. Ex. OO (ECF No. 83-43). Each Plaintiff now feels misled knowing that Kohls almost never sold the Products they purchased at the advertised original price. Murillo Decl., ¶¶9-10; M. Baehman Decl., ¶6; B. Baehman Decl., ¶6. Thus,

Plaintiffs' statements confirm Plaintiffs' experts' findings that Kohls' false advertised reference prices caused consumers to be deceived and therefore overpay for their purchases.

**D.**     **Plaintiffs' Expert Can Use Kohls' Sales Data to Mechanistically Calculate Classwide Damages and Restitution**

Mr. Tregillis analyzed Kohls' Wisconsin sales data for the Products and calculated the pecuniary loss and the amount unjustly conferred on Kohls as the difference between what members of the WDTPA and UJE Classes (defined below) paid for these 14 Products and what they should have paid.  Tregillis Report, ¶¶46-68, 74. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████ *Id*., ¶¶39-44, 68. ████████████████████████████

████████████████████████████████████████

███████████████████████████████████████ *Id*., ¶¶49, 65. ████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ *Id*., ¶49. ██████████████████

████████████████████████████████████████

███████████████████████████████████ *Id*., ¶¶53-55, 63-64.  Mr. Tregillis applied this methodology across all Wisconsin sales to achieve the damages and restitution amounts for a Wisconsin-only class based on Plaintiffs' 14 Products.  *Id*., ¶¶57-58, 68, 74.  He can adjust this methodology to account for any variation in the described inputs.  *Id*., ¶¶57, 63-65. ███████████████████████████████████

████████████████████████████████████████

████████████ *Id*., ¶67; *see* Declaration of Christian Tregillis, CPA, ABV, CFF, CLP ("Tregillis

Decl."), ¶¶4-11.  *See also* Ex. 4, Deposition of Nancy Wallace ("Wallace Dep.") at 29:3-31:2, 40:22-41:12, 69:5-70:7, 108:20-109:3, 109:22-25.

## III.    THE PROPOSED CLASSES

Plaintiffs seek certification of the following classes:

**Declaratory and Injunctive Relief Class**.  All persons who, during the Class Period from February 18, 2013 through the date the case is certified and notice is disseminated, purchased one or more items at any Kohls store in the United States, or in the alternative in Wisconsin, at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s).    Plaintiffs seek certification of the Declaratory and Injunctive Relief Class pursuant to Rule 23(b)(2).  The Declaratory and Injunctive Relief Class seeks to have the Court declare that Kohls continues to violate the WDTPA, Wis. Adm. Code §§ATCP 124.04-05, and 16 C.F.R. §233.1 and to enter an Order enjoining Kohls from continuing to advertise fictitious "original" and "regular" prices by requiring it to implement whatever measures are necessary to comply with the WDTPA, Wis. Adm. Code §§ATCP 124.04-05, and 16 C.F.R. §233.1.

**WDTPA Class**.  All persons who, during the Class Period from February 18, 2013 through the date the case is certified and notice is disseminated, purchased one or more items at any Kohls store in the United States, or in the alternative in Wisconsin, at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s). Plaintiffs seek certification of the WDTPA Class pursuant to Rule 23(b)(3).

**Unjust Enrichment ("UJE") Class**.  All persons who, during the Class Period from February 18, 2010 through the date the case is certified and notice is disseminated, purchased one or more items at any Kohls store in the states of Alaska, Florida, Georgia, Idaho, Kansas, Kentucky, Maine, Maryland, Nevada, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Washington, and Wisconsin (the "UJE States"), or in the alternative in Wisconsin, at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s).  Plaintiffs seek certification of the UJE Class pursuant to Rule 23(b)(3).

Excluded from the classes are: (a) Kohls' Board members or executive officers, including its attorneys; and (b) governmental entities, including this Court.

## IV.    ARGUMENT

Rule 23(a) requires Plaintiffs to satisfy four prerequisites to class certification:   (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  In addition, the

action must be "maintainable" under one of the three subsections of Rule 23(b). *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Here, Plaintiffs seek certification under Rules 23(b)(2) and (b)(3). Certification is appropriate under Rule 23(b)(2) when a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3), on the other hand, provides for class treatment when (i) common questions of law or fact predominate over individual issues; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As several courts have recognized, challenges to a retailer's false price-comparison scheme are ideally suited for class certification. *See*, *e.g.*, *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016); *see also generally* Ex. 2, *Russell v. Kohl's Dep't Stores, Inc.*, No. 5:15-cv-01143-RGK-SP (C.D. Cal.), ECF No. 57.

## A.     The Requirements of Rule 23(a) Are Satisfied

### 1.     The Numerosity Requirement of Rule 23(a)(1) and the Ascertainability Requirement Are Satisfied

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). The Seventh Circuit has said that a group as small as 40 may satisfy the numerosity requirement. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). In assessing numerosity, the Court is entitled to make "common sense assumptions" about the size of the class. *Stawski v. Secured Funding Corp.*, No. 06-CV-0918, 2008 WL 647024, at *1 (E.D. Wis. Mar. 6, 2008) (Stadtmueller, J.). Given that Kohls had $19.2 billion in net sales last year (Ex. 3, Kohls 2016 Form 10-K at 15), common sense dictates that there are at least hundreds of thousands of consumers who have purchased

merchandise from Kohls during the applicable class periods, such that each class is sufficiently large to satisfy Rule 23(a)(1). *See* Ex. 2, *Russell*, ECF No. 57 at 2. Indeed, Kohls does not dispute this element. PMSJ Opp. Ex. B, Defs' Resp. to RFAs, No. 1.

A class also must be ascertainable. In the Seventh Circuit, ascertainability simply refers to whether the classes are "defined clearly and based on objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659 (7th Cir. 2015) (rejecting adoption of a "heightened ascertainability requirement" used by other circuits). To satisfy ascertainability, the class definition must "identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id*. at 660. A plaintiff does not need to establish a reliable and administratively feasible way to identify all those who fall within the purported class at the class certification stage. *Id*. at 664. These concerns can be addressed through case management techniques, not denial of class certification. *Id*.

The proposed definition for each class satisfies this test. Class membership is based on objective criteria: (1) the purchase of products from Kohls in the United States, UJE States, or, in the alternative, Wisconsin; and (2) a purchase price that represents a discount of at least 30% off of the regular or original price. These objective characteristics can be established using Kohls' sales data and, if necessary, customer receipts. *See*, *e.g.*, Tregillis Report, Appendix D at Schedules 8-11; PMSJ Opp. Exs. T, OO. ███████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ PMSJ Opp. Ex. B, Defs Resp. to RFAs, Nos. 8-9, 11-12; PMSJ Opp. Ex. O, Vranak Dep. at 42:18-43:9, 43:14-24; PMSJ Opp. Exs. W, X, Y (ECF Nos. 83-25, 83-26, 83-27, respectively); Ex. 4, Wallace Dep. 29:3-33:25, 34:19-38:11, 40:22-41:12, 69:5-70:7, 71:21-24, 108:20-109:3, 109:22-25; Ex. 5,

Vranak Dep. 113:12-25; Ex. 6, Exhibit 3 to the Vranak Dep. (non-Kohls credit card data elements captured); Ex. 7, KLS-LE006446-53 (transactional data captured for Kohls charge cards); Ex. 8, KLS-LE00006454-6462 (transaction data captured for "Yes2You" loyalty cardholders); Ex. 9, KLS-MUR00207 (Plaintiff Miguel Murillo's transactional data). Thus, the proposed definitions of each class satisfy the Seventh Circuit's ascertainability requirement.

### 2. The Commonality Requirement of Rule 23(a)(2) Is Satisfied

Rule 23(a)(2) requires at least one common question of law or fact. This means that a claim must "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *accord Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). "The critical point is 'the need for *conduct* common to members of the class.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014)) (emphasis in original). Thus, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756 (collecting cases).

Commonality is satisfied here because Kohls' deceptive pricing scheme was uniformly applied to all consumers and gave rise to identical claims held by all members of each class. The crux of Plaintiffs' claims is that Kohls applies a standardized and uniform set of pricing rules to deceptively induce consumers to purchase Kohls' merchandise, causing consumers to overpay for merchandise and allowing Kohls to reap unjust benefits. Thus, it is Kohls' own uniform pricing policy and sales data that will demonstrate on a classwide basis the "truth or falsity" of Plaintiffs' contention that Kohls implemented a deceptive company-wide price-comparison

scheme that caused consumers to overpay for Kohls' merchandise.  *See Spann*, 307 F.R.D. at 518; Ex. 2, *Russell*, ECF No. 57 at 2-3.  Such a determination "will resolve an issue that is central to the [claims'] validity[.]"  *Dukes*, 131 S. Ct. at 2551; *see also Suchanek*, 764 F.3d at 756-58; *Chicago*, 797 F.3d at 434.

### 3.    The Typicality Requirement of Rule 23(a)(3) Is Satisfied

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  Typicality is established where, as here, Plaintiffs' claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory."  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *see also Wood v. Capital One Auto Fin., Inc.*, No. 06-CV-7, 2006 WL 6627680, at *2 (E.D. Wis. Sept. 19, 2006) (Stadtmueller, J.).  The typicality requirement is meant to ensure "'that the named representative's claims have the same essential characteristics as the claims of the class at large.'"  *West v. Timberlake*, No. 08-CV-670, 2009 WL 959655, at *2 (E.D. Wis. Apr. 8, 2009) (Stadtmueller, J.).  Courts "look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)[,]" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and ask whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group."  *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Like other class members, Plaintiffs purchased Kohls' products advertised at a discount of 30% or more off of an inflated regular price.  PMSJ Opp. Exs. T, OO; Tregillis Report, Appendix D at Schedule 11.  Their claims are typical because they are based on Kohls' uniform course of conduct – its use of a standardized, price-comparison advertising scheme that it

13

systematically applies to all of its merchandise nationwide to deceptively induce consumers to purchase Kohls' merchandise and reap unjust benefits. PMSJ Opp. Exs. Q, S; *see generally* Compeau Report. They also assert the same legal and remedial theories as other class members. Because Plaintiffs' claims are identical to those that would be asserted by absent class members, "the interests of the entire class would be advanced if the plaintiffs prevail on their own claim." *Temme v. Bemis Co., Inc.*, No. 08-CV-090, 2009 WL 1505120, at *5 (E.D. Wis. May 28, 2009) (Stadtmueller, J.). Thus, Plaintiffs satisfy the typicality requirement. Ex. 2, *Russell*, ECF No. 57 at 3; *Spann*, 307 F.R.D. at 519.

Kohls will likely contend that Plaintiffs are not typical for the same reasons it argued in its motion for summary judgment – that Kohls made no representations to Plaintiffs that caused them to suffer a pecuniary loss because, according to Kohls, Plaintiffs did not observe any misrepresentations and/or were "*only*" motivated to shop at Kohls for reasons other than price. *See* Defs. MSJ Br. at 4-9, 15-16, 19, 21-24 (ECF No. 61). Plaintiffs soundly refuted these arguments in their opposition to the motion for summary judgment. *See* PMSJ Opp. at 6-7, 9-10, 12, 17-18, 20-23. Each Plaintiff purchases merchandise at Kohls *because of* its advertised discounts. *See supra*, §II.C. Dr. Compeau also explains that reference prices are highly relevant and material to consumers' (including Plaintiffs') purchasing decisions. Compeau Report at 1, 3-6, 9; *see also* Dimofte Report at 5-10, 12-13, 21. And, Plaintiffs demonstrate that each behaved as a reasonable consumer, paying close attention to original and discount prices. *See*, *e.g.*, Murillo Decl., ¶4; M. Baehman Decl., ¶5; B. Baehman Decl., ¶5. Thus, as reasonable consumers, Plaintiffs are typical. *See*, *e.g.*, *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 249 (S.D. Ill. 2015); *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL 988992, at *13 (N.D. Cal. Mar. 10, 2014); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 476 (C.D. Cal. 2012).

#### 4. The Adequacy Requirements of Rules 23(a)(4) and 23(g)(1) Are Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court also must appoint class counsel who have adequately investigated claims, adequate experience and knowledge of the law, and adequate resources to commit to representing the class. Fed. R. Civ. P. 23(g)(1).

Plaintiffs are adequate because each is a member of the classes and each has no antagonistic interests or disabling conflicts. Kohls' conduct, vis-à-vis Plaintiffs, was identical to its conduct with the class and Plaintiffs seek the same recovery as other members of the classes. Moreover, Plaintiffs have retained competent counsel, participated in discovery, and intend to vigorously pursue this action on behalf of the classes. *Wood*, 2006 WL 6627680, at *4.

Finally, Plaintiffs' counsel are well-qualified to conduct this litigation, possessing extensive experience in prosecuting complex consumer class actions. Ex. 10, Scott+Scott's Firm Résumé. Plaintiffs' counsel have invested significant time and resources litigating this action and will continue to devote the necessary resources to representing the classes following appointment as Class Counsel. Thus, Plaintiffs' counsel have, and will continue to, "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Therefore, Plaintiffs request that the Court appoint Plaintiffs as Class Representatives under Rule 23(a) and Scott+Scott as Class Counsel under Rule 23(g).

### B. The Requirements of Rule 23(b)(2) Are Satisfied

Plaintiffs seek to have the Court certify an independent Rule 23(b)(2) class seeking solely declaratory and injunctive relief separately from the damages/restitution classes they seek to have certified pursuant to Rule 23(b)(3). Class certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).

Kohls' false price-comparison scheme is ongoing and constitutes conduct that applies generally to the class because Kohls' misrepresentations are uniformly and universally disseminated to all consumers in that Kohls' pricing practices are not tailored to individual consumers.  Kohls cannot modify its pricing practices on a per-customer basis.  Rather, any changes to those practices will apply to all stores and to all consumers.  Kohls' consumers thus constitute a cohesive class because all members of the Declaratory and Injunctive Relief Class are deceived by Kohls' original reference prices that are not *bona fide*.  *See generally* Dimofte Report.  Accordingly, final injunctive relief is an appropriate remedy because it would provide relief to the class as a whole by precluding Kohls from continuing to deceive consumers by its unlawful conduct.  *See Dukes*, 131 S. Ct. at 2557 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'").

Moreover, injunctive relief is appropriate because Kohls **continues** to violate the WDTPA, Wis. Adm. Code §§ATCP 124.04-05, and 16 C.F.R. §233.1.  FAC, ¶125.  Plaintiffs therefore seek to have this Court declare that Kohls' conduct continues to be unlawful under these statutes and regulations and award injunctive relief that enjoins the challenged advertising.  FAC, ¶126.  This is exactly the type of class appropriate for certification under Rule 23(b)(2).  *See*, *e.g.*, *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999) (noting that there is no doubt "Rule 23(b)(2) is well[-]suited to pattern-or-practice suits"); Ex. 2, *Russell*, ECF No. 57 at 8 (certifying class of California Kohls purchasers under Rule 23(b)(2) arising out of same

conduct alleged here); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 316 (S.D. Fla. 2001) ("Requesting a declaration that Defendants presently are violating the law and an injunction forcing defendants to comply with the law is precisely the type of class appropriate for class certification under Rule 23(b)(2)."). Furthermore, a Rule 23(b)(2) class can be certified where a separate Rule 23(b)(3) class seeks damages. *Jefferson*, 195 F.3d at 898; *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 581-82 (7th Cir. 2000); *Gooch v. Life Inv's Ins. Co. of Am.*, 672 F.3d 402, 428 n.15, 429 (6th Cir. 2012); *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 345 (S.D. Iowa 2013) (certifying a Rule 23(b)(2) injunctive relief class separately from Rule 23(b)(3) damages class where challenged conduct arose out of a common course of conduct); *Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357, 370 (W.D.N.Y. 2013) ("*Dukes* does not preclude certifying a class under Rule 23(b)(2) and *separately* certifying a class under Rule 23(b)(3) for non-trivial monetary damages.") (emphasis in original); *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 173-74 (S.D.N.Y. 2011) (denying motion to decertify classes separately certified under Rule 23(b)(2) and (b)(3)); William Rubenstein, Newberg on Class Actions §4:38 (5th ed. 2013).

## C.      The Requirements of Rule 23(b)(3) Are Satisfied

Plaintiffs seek certification of the WDTPA and UJE Classes under Rule 23(b)(3), where certification is appropriate if: (1) common questions of law or fact predominate over questions affecting only individual class members; and (2) class treatment is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). The predominance analysis requires a "qualitative assessment," *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), that "asks whether the common, aggregation-enabling, issues in the case are ***more prevalent or important*** than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v.*

*Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (defining common questions as those where "'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"). As the Supreme Court recently clarified, when "'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.*

### 1. Common Questions of Fact and Law Predominate

#### a. Common Questions of Law Predominate

##### i. Wisconsin's Choice of Law Rules Compel Application of the WDTPA Nationwide

The WDTPA can appropriately be applied nationwide and as a result, common questions of law will predominate. The WDTPA does not limit its protection to Wisconsin residents only. *See Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399 (E.D. Ill. 1996) (Illinois resident permitted to bring claim under the WDTPA). The WDTPA prohibits misrepresentations "made, published, disseminated, circulated, or placed before the public, in this state," Wis. Stat. §100.18(1), and provides a private right of action for enforcement to "*[a]ny person* suffering pecuniary loss because of a violation of this section." Wis. Stat. §100.18(11)(b)(2). The focus of the statute is on where the misrepresentations were "made," not where the injury occurred, and there is no provision in the statute or case law that limits the term "person" to Wisconsin residents. *See Le*, 160 F. Supp. 3d at 1115 (rejecting Kohls' argument that the plaintiff could not state a claim under the WDTPA because he "saw" Kohls' misrepresentations in California because "the advertisements that comprise the basis of [the plaintiff's] claims indeed were 'made,' and then 'disseminated,' by Kohls from its Wisconsin headquarters."); *Boulet v. Nat'l*

*Presto Indus., Inc*., No. 11-cv-840, 2013 WL 4014982, at *3 (W.D. Wis. Aug. 6, 2013) (the WDTPA "lacks a territorial limitation").

Therefore, application of the WDTPA nationwide accords with Wisconsin's choice-of-law rules, which as a court sitting in diversity, this Court must follow. *See Love v. Blue Cross & Blue Shield of Ga., Inc.*, 439 F. Supp. 2d 891, 892 (E.D. Wis. 2006). Under the first step of Wisconsin's two-step choice of law approach, "'the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of greater significance.'" *Drinkwater v. Am. Family Mut. Ins. Co*., 290 Wis. 2d 642, 658 (2006). In this case, non-forum contacts are of no greater significance – in fact, they are of lesser significance – than Wisconsin contacts, and therefore, the presumption in favor of Wisconsin law applies. *See*, *e.g.*, *Triad Grp., Inc. v. Vi-Jon, Inc*., 870 F. Supp. 2d 645, 649-50 (E.D. Wis. 2012). The only non-forum contact is simply fortuitous – consumers make their Kohls purchases in their home state. On the other hand, Wisconsin has more numerous and stronger contacts in this case because Kohls is headquartered in Wisconsin, its executives and employees involved in the promotional pricing policies at issue are located in Wisconsin, the deceptive price comparison advertising scheme was devised in Wisconsin and – most importantly – the misrepresentations that deceived Plaintiffs and class members were made in, and emanated from, Wisconsin. As such, the Court need not proceed past this first-step in the Wisconsin choice of law analysis.

Even if the Court proceeds to the second step in Wisconsin's choice of law analysis, the "choice-influencing" factors that the Court must consider – "(1) Predictability of results; (2) Maintenance of interstate and international order; (3) Simplification of the judicial task; (4) Advancement of the forum's governmental interests; and (5) Application of the better rule of law[,]" *Drinkwater*, 290 Wis. 2d at 658 – weigh in favor of applying the WDTPA nationwide.

**(1) Predictability of Results.** This first factor concerns the parties' expectations. *See State Farm Mut. Auto. Ins. Co. v. Gillette*, 251 Wis. 2d 561, 589 (2002). Kohls should expect Wisconsin law to apply, as Kohls is headquartered in Wisconsin, its key executives are located in Wisconsin, and the deceptive price-comparison scheme was conceived in, and disseminated from, Wisconsin. *See Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 536 (D. Minn. 2007) (finding "both non-Minnesota class members and Allianz could have predicted that Minnesota law would govern claims based on Allianz's allegedly fraudulent activities that emanated from Minnesota."). This factor favors the application of the WDTPA nationwide.

**(2) Maintenance of Interstate and International Order.** This factor "requires that the jurisdiction that is minimally concerned defer to the jurisdiction that is substantially concerned." *State Farm*, 251 Wis. 2d at 589-90. Wisconsin has more substantial contacts to each class member's claims and the underlying facts than any other jurisdiction. While non-forum jurisdictions have contacts with class members, those contacts are comparatively minimal and predicated only on "place of injury," where the purchases were made. Courts have explained that the place of injury can be "fortuitous" and thus of limited importance, especially in cases, like here, where "'allegedly unfair or deceptive acts caused injury throughout the country.'" *Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1221 (W.D. Wash. 2012). Under those circumstances, that court explained, it is better to "shift[] the focus to the location where the conduct ***causing the harm*** occurred." *Id.* at 1222 (applying law of the state where defendant was headquartered and created the fraudulent nationwide misrepresentations); *see also Mooney*, 244 F.R.D. at 536 (holding application of Minnesota law supported this second factor because "[defendant] is a Minnesota corporation that allegedly created fraudulent marketing materials in Minnesota, distributed them from Minnesota, and benefitted from [them] . . . when it received [payments] in

Minnesota"). For these reasons, this factor points to application of the WDTPA nationwide.

**(3) Simplification of the Judicial Task.** As a general rule, the Wisconsin Supreme Court has held that "the judicial task is rarely simplified when lawyers and judges must apply themselves to foreign law." *Drinkwater*, 290 Wis. 2d at 662. Because this Court sits in Wisconsin and the law at issue here is well developed under the case law, this factor clearly favors the application of forum law over non-forum law. Notably, applying the law of every jurisdiction – in which a class member made a purchase – is obviously a more burdensome task. Thus, this factor favors application of the WDTPA nationwide.

**(4) Advancement of the Forum's Governmental Interest.** "'If it appears that the application of forum law will advance the governmental interest of the forum state, this fact becomes a major, though not in itself a determining, factor in the ultimate choice of law.'" *Id.*, 290 Wis. 2d at 664. The State of Wisconsin has several strong and legitimate state interests in policing its corporations and protecting consumers from deceptive practices like those alleged here. First, Wisconsin has an important policy interest in redressing harms and providing compensation to victims of deceptive conduct. Second, Wisconsin has a legitimate economic interest in preserving an honest business climate, one that is free of fraud and deceptive practices. As the Wisconsin Supreme Court has stated, "Wisconsin has an interest in having its laws applied to corporations . . . transacting business within the state." *Beloit Liquidating Tr. v. Grade*, 270 Wis. 2d 356, 377 (2004) (applying Wisconsin law where a defendant corporation headquartered in Wisconsin and its officers breached fiduciary duties while working in Wisconsin). Indeed, in advancing Wisconsin's interest in protecting consumers, courts have noted the broad remedial purpose of the WDTPA: "The broad remedial scope of sec. 100.18 and its protective purpose make it similar to the remedial provisions of the federal antitrust laws in

that to eliminate or rectify a wrong the traditional standards of proof may be relaxed if necessary." *Tim Torres Enters., Inc. v. Linscott*, 142 Wis. 2d 56, 72 (Ct. App. 1987).

While non-forum states may have similar interests in providing relief to victims of deceptive conduct, none share the same incentive to promote and preserve the legitimacy and fairness of the marketplace and policing the conduct of corporations incorporated in its state. Indeed, because Kohls is incorporated and headquartered in Wisconsin, Wisconsin is the ***only*** state that has an interest in protecting the public ***and*** regulating a resident corporation. For this reason, the governmental interest factor favors the application of Wisconsin law.

**(5) Better Rule of Law.** The scope of this factor has been treated differently under the case law. Some courts say "[t]his fifth factor comes into play where one state's law 'is anachronistic or fails to reflect modern trends.'" *Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 967-68 (E.D. Wis. 2009). Other courts, meanwhile, have stated that the factor "largely echos the fourth" – that is, where "the forum state has a clear policy, and when the state's law fairly articulates that policy, it follows that the 'better rule of law' will tend to be the forum state's law." *Love*, 439 F. Supp. 2d at 897. Clearly, under the analysis in *Love*, the better rule of law is Wisconsin's. Even if the Court does not follow *Love*, the fifth factor is either neutral or favors application of Wisconsin law, as there is no evidence that the laws of non-forum states are anachronistic.

In short, application of the WDTPA to a nationwide class is appropriate under Wisconsin choice of law rules.[4] And, with nationwide application of the WDTPA, no individualized legal issues will predominate over common ones.

---

[4] To the extent the Court does not find that Wisconsin choice of law rules allow for the application of the WDTPA nationwide, Plaintiffs also seek certification of a Wisconsin class for the WDTPA claim.

Plaintiffs propose a UJE Class, on behalf of consumers who made purchases from Kohls in the 16 UJE States, because the elements of unjust enrichment under each of these states do not materially differ, and thus, common questions of law predominate.[5]  A plaintiff seeking to certify a multistate class bears the burden of showing the court that there are no material variations among the laws of the multiple states for which certification is sought.  *See*, *e.g.*, *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 681 (S.D. Fla. 2012).  On that score, courts have held that "the existence of minor differences in state law does not preclude the certification of nationwide classes."  *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 116 (D.D.C. 2007).  Thus, a court need not require complete uniformity of state law, but rather need only assure itself that there are not material conflicts among the various states' laws, such that they may be grouped together into a small number of subclasses.  *See Checking Account*, 281 F.R.D. at 681; *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000) (collecting cases).

Several courts have declared unjust enrichment claims to be "'universally recognized'" and "'materially the same throughout the United States.'"  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 518 (E.D. Mich. 2003) (characterizing the standards of unjust enrichment around the country as "virtually identical").  What's more, courts readily certify multistate and nationwide classes for unjust enrichment claims.  *See*, *e.g.*, *Terazosin*, 220 F.R.D. at 698 (certifying a 17-state unjust enrichment class under the laws of Florida, Kansas, Maine, Nevada,

---

[5]    To succeed on an unjust enrichment claim in each of the UJE States, a plaintiff must demonstrate that:  (1) they conferred a benefit on defendant; (2) defendant accepted or retained that benefit; and (3) defendant appreciated that benefit under circumstances making it unjust for defendant to retain that benefit.  *See Buckett v. Jante*, 316 Wis. 2d 804, 812 (2009).  *See also* Ex. 1 (state-by-state UJE case law chart).

and Wisconsin); *Checking Account*, 281 F.R.D. at 681 (certifying three multistate unjust enrichment subclasses, including one encompassing Florida, Maine, Maryland, Pennsylvania, Rhode Island, and South Carolina, and noting that "courts often certify unjust enrichment claims because 'common questions predominate' and are 'all easily resolved class wide.'" (collecting cases)); *see also In re Abbott Labs. Norvir Anti-Trust Litig.*, No. C 04-1511 CW, 2007 WL 1689899, at *9-10 (N.D. Cal. June 11, 2007) (certifying nationwide unjust enrichment class and noting that "sub-classes can be identified to group residents of various States with identical common law requirements"); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58-63 (D.N.J. 2009) (same); *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 239-40 (C.D. Cal. 2003) (same); *Singer v. AT & T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (same). Accordingly, certification of a multistate UJE Class will not present predominance issues.[6]

> ### b. Common Questions of Fact Predominate as to Plaintiffs' WDTPA and Unjust Enrichment Claims
>
> #### i. Plaintiffs Will Prove Their WDTPA Claim with Common Evidence

Each element of Plaintiffs' WDTPA claim – (i) "that with the intent to induce an obligation, the defendant made a representation to 'the public[;]' [(ii)] that the representation was untrue, deceptive or misleading[; and (iii)] that the representation caused the plaintiff a pecuniary loss" (*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 301 Wis. 2d 109, 121-22 (2007)) – can be proved with common evidence, ████████████████████████████ Here, common questions of law or fact will predominate over any individual questions as the focus in determining liability under the WDTPA will be on Kohls' conduct. *Novell v. Migliaccio*, 309 Wis. 2d 132, 145 (2008).

---

[6]     To the extent the Court finds that a multistate UJE Class cannot be certified, Plaintiffs also seek certification of a Wisconsin class in the alternative.

Demonstrating whether Kohls' price-comparison advertising scheme is deceptive involves a determination that can apply classwide. Plaintiffs rely on Wisconsin and federal laws that prohibit false or misleading trade practices, such as false advertising. Wisconsin prohibits comparison advertising with false reference prices because "price comparisons based on arbitrary or inflated prices or values can only serve to deceive or mislead." Wis. Adm. Code §ATCP 124.01; *see also* Wis. Stat. §100.18(1). Wisconsin regulations specifically define several ways in which comparison advertising can be lawful. *See*, *e.g.*, Wis. Adm. Code §§ATCP 124.04-05. The Federal Trade Commission ("FTC") likewise specifically condemns "bargain advertising[,]" where "the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction." 16 C.F.R. §233.1(a). The Wisconsin and FTC regulations make clear that "an advertised comparison to the regular price is deceptive if the advertiser does not make, or does not *genuinely* try to make, substantial sales of the product at that price." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 974 (7th Cir. 1999).

Common questions predominate under the WDTPA because a violation of Wisconsin and FTC regulations can be objectively determined using Kohls' own Pricing Guide and sales data. *Spann*, 307 F.R.D. at 521-22. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Tregillis Report, ¶42. ██████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ *Id.* █████████████████████

*Id.*, ¶44; *see also* Tregillis Decl., ¶8. ███████████████████████████████

███████████████████████████████ *See* Compeau Report at 6-9.

The documents and testimony evidence that Kohls' pricing scheme applied to Plaintiffs and other members of the classes uniformly nationwide and their injuries are likewise all based on the same underlying conduct. *See*, *e.g.*, PMSJ Opp. Exs. Q, S. This makes it unnecessary to prove liability on an "ad-by-ad basis." *See Spann*, 307 F.R.D. at 518, 528. ██████████████

███████████████████████████████

███████████████████████████████ *See* Compeau Report at 6-9; Dimofte Report at 21. Similarly, causation also can be proved with common evidence because empirical studies show that reasonable consumers are deceived by Kohls' fictitious reference pricing. *See* Compeau Report at 3-6; *see also generally* Dimofte Report. Thus, common questions establishing WDTPA liability will predominate over any individual issues, as the inquiry focuses on Kohls' conduct.

> ii. **Plaintiffs' Will Prove Their Claim for Unjust Enrichment with Common Evidence**

Class treatment – whether for a multistate class or, in the alternative, a Wisconsin only class – is appropriate for Plaintiffs' unjust enrichment claim because common questions of fact establishing the elements of this claim predominate over individual questions. ██████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████ *See*, *e.g.*, PMSJ Opp. Ex. Q, S. Another predominant issue, subject to common proof, is whether Kohls

appreciated that a benefit was conferred on it through its deceptive price comparison scheme. *See*, *e.g.*, Compeau Report at 6-9; Tregillis Report, ¶¶45-74. Likewise, whether the benefit conferred on Kohls was unjust also can be proved with common evidence demonstrating that reasonable consumers are deceived by fictitious reference pricing. *See* Compeau Report at 3-6; *see also generally* Dimofte Report. Like under the WDTPA, the focus under an unjust enrichment theory is on the defendant's conduct. *See Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004). And where, as here, the defendant's conduct is common and uniform, "courts often certify unjust enrichment claims because 'common questions predominate' and are 'all easily resolved class wide.'" *Checking Account*, 281 F.R.D. at 681; *see also Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 568-70 (E.D. Mich. 2009); *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013).

**c.** **Common Questions Predominate as to Plaintiffs' Measure of Damages and Restitution**

"Damages are susceptible of measurement across the entire class" if there is "a single or common method that can be used to measure and quantify the damages of each class member." William Rubenstein, Newberg on Class Actions §12:4 (5th ed. 2013). Predominance also requires that Plaintiffs present a damages model that is "consistent with [their] liability case[.]" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). If damages are capable of measurement on a classwide basis, questions of individual damage calculations will not overwhelm questions common to the class. *Comcast*, 133 S. Ct. at 1433; *Butler*, 727 F.3d at 801.

**i.** **Plaintiffs Will Use Common Evidence to Measure Classwide Damages Under the WDTPA**

While the WDTPA does not define the scope of a "'pecuniary loss,'" Wisconsin courts interpret the term expansively. *See Mueller v. Harry Kaufmann Motorcars, Inc.*, 359 Wis. 2d 597, 613 (Ct. App. 2014). In the false and deceptive advertising context, "recognizing that

consumers incur pecuniary loss whenever they pay a premium for products they were fraudulently induced to purchase provides an incentive to consumers and their attorneys to make full use of the DTPA as the legislature intended." *Tietsworth v. Harley-Davidson, Inc.*, 261 Wis. 2d 755, 766-67 (Ct. App. 2003), *rev'd on other grounds*, 270 Wis. 2d 146 (2004); *see also State v. Going Places Travel Corp.*, 362 Wis. 2d 414, 430 (Ct. App. 2015) (where "'it was impossible to get the kind of bargains they, the consumers, were led to believe they would get . . . every purchaser suffered a pecuniary loss'"). Under the WDTPA, evidence of a "pecuniary loss may be proven 'by reasonable evidence of harm, as opposed to precise figures in all respects.'" *Going Places*, 362 Wis. 2d at 432; *Tim Torres*, 142 Wis. 2d at 70-75.

Mr. Tregillis calculates the applicable "premium" as the difference between what consumers paid for their purchases and what each should have paid had Kohls advertised a *bona fide* original reference price. Tregillis Report, ¶¶46-68; *see supra*, §II.D. For example, using Wisconsin regulations as the legal framework for his analysis, Mr. Tregillis calculated the "but for" original reference price for each of Plaintiffs' purchases as the highest promotional price Kohls actually offered for 28 days in the 90-day period prior to the date of each of Plaintiffs' purchases. *Id.*, ¶49. [7] He then applied the same advertised discount to the "but for" or "true" reference price to achieve the amount overpaid. *Id.*, ¶¶53-55. This methodology takes into account the legal framework provided under the Wisconsin and FTC regulations (*id.*, ¶¶20-25, 50; *see also* PMSJ Opp. at 14-20), and therefore, is consistent with Plaintiffs' theory of liability. *Comcast*, 133 S. Ct. at 1433.

---

[7]     The time period, 28 out of the last 90 days, that Mr. Tregillis uses in his methodology accords with Wis. Adm. Code §ATCP 124.05 and is used to determine what a reasonably substantial period of time for a product to be offered for sale would be to satisfy either the Wisconsin regulations or the requirements under the FTC Act. *See supra*, §IV.C.1.b.i.

Mr. Tregillis applied this methodology to Kohls' Wisconsin sales data to achieve damages based on sales of the Products in Wisconsin. *Id.*, ¶¶57-58, 68. ██████████████ ████████████████████████████████████ (Ex. 4, Wallace Dep. at 29:3-31:2, 40:22-41:12, 69:5-70:7, 108:20-109:3, 109:22-25), ████████████████████ ██████████████████████████████████ *Id.*, ¶67; Tregillis Decl., ¶¶10-11. He also can adjust this methodology to account for any variation in the described inputs. Tregillis Report, ¶¶57, 63-65. Therefore, this methodology is objective and mechanical and can be readily utilized to calculate classwide damages. *See also Butler*, 727 F.3d at 800-02; *Spann*, 307 F.R.D. at 531.

## ii. Plaintiffs Will Use Common Evidence to Calculate Classwide Restitution for Unjust Enrichment

Although unjust enrichment is measured by the benefit conferred on the defendant, not the plaintiff's loss, *Mgmt. Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188 (1996),[8] "[o]ften [the two measures are] equivalent, as when the plaintiff had overpaid the defendant by mistake and seeks to recover the overpayment." *Schlueter v. Latek*, 683 F.3d 350, 354 (7th Cir. 2012); *accord Pro-Pac, Inc. v. WOW Logistics Co.*, 721 F.3d 781, 788 (7th Cir. 2013). This is exactly the case here. Therefore, the methodology for calculating restitution is the same as for calculating pecuniary loss. Tregillis Report, ¶74. By measuring the additional profit Kohls received from consumers, as a result of its deception, Plaintiffs provide a "'fair and reasonable approximation'" of the benefit conferred on Kohls, *W.H. Fuller Co. v. Seater*, 226 Wis. 2d 381, 387-88 (Ct. App. 1999), and propose a methodology for calculating restitution that is consistent with their liability case. Again, Mr. Tregillis already has performed these calculations for the Products for sales in Wisconsin and given similar data, he could

---

[8] *See also* Ex. 1 (state-by-state UJE case law chart).

mechanically perform the same calculations on behalf of the UJE Class. Tregillis Report, ¶¶67-68, 74; Tregillis Decl., ¶¶8-11.

## 2. A Class Action Is Superior to Individual Actions

A class action under Rule 23(b)(3) also must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the alternative mechanism to adjudicate these claims would be for consumers to present their claims individually. It is likely that in many, if not most, individual cases, litigation costs would dwarf potential recovery. *Spann*, 307 F.R.D. at 531-32. Moreover, there also is no reason to believe that prosecution of class members' claims in a single action will create more management problems than would hundreds of thousands of individual lawsuits. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Butler*, 727 F.3d at 801. Thus, a class action is clearly superior to hundreds of individual lawsuits.

## V. CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court grant Plaintiffs' motion, certify the classes pursuant to Federal Rules 23(a), (b)(2), and (b)(3), appoint Plaintiffs as Class Representatives, and appoint Scott+Scott as Class Counsel.

DATED: November 8, 2016

Respectfully submitted,

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

*/s/ Erin Green Comite*
Erin Green Comite
Andrea Farah
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
ecomite@scott-scott.com
afarah@scott-scott.com

Joseph P. Guglielmo
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue S, Ste. 2200
Minneapolis, MN 55401
Telephone:  612-339-6900
Facsimile:  612-339-0981
khriebel@locklaw.com

Gary. F Lynch
**CARLSON LYNCH SWEET**
**KIPELA & CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone:  412-322-9243
Facsimile:  412-231-0246
glynch@carlsonlynch.com

E. Kirk Wood
**WOOD LAW FIRM, LLC**
P.O. Box 382434
Birmingham, AL 35238
Telephone:  205-908-4906
Facsimile:  866-747-3905
ekirkwoodl@bellsouth.net

*Counsel for Plaintiffs Miguel Murillo,*
*Michael Baehman, and Bonnie Baehman*

31

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List. I certify under penalty of perjury that the foregoing is true and correct.

/s/ Erin Green Comite
Erin Green Comite
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
ecomite@scott-scott.com